BOARD OF EDUCATION OF THE CITY OF CHICAGO, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Phillip Stice, Appellee).

First District (Industrial Commission Division)   No. 1—87—2700WC

Opinion filed May 5, 1989.

Patricia J. Whitten, of Law Department of Board of Education, of Chicago, for appellant.

Monico Pavich, of Chicago, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

This is an appeal from an award of benefits under the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1985, ch. 48, par. 172.36 *et seq.*) on remand from the appellate court. Initially, claimant, Phillip Stice, filed an application for adjustment of claim under the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*) for

an incident occurring on September 5, 1979. The arbitrator found an accident but no causal connection based on the workers' compensation application. The arbitrator denied claimant's motion to add an occupational disease claim. The Industrial Commission (Commission) affirmed the arbitrator's decision but allowed the claimant to add an occupational disease claim. The circuit court confirmed the Commission's decision. The appellate court entered an order remanding the case to the commission for a hearing on the occupational disease claim. On remand, the Commission awarded 183²/₇ weeks temporary total disability and $10,114.33 in medical expenses under the Occupational Diseases Act. The circuit court confirmed the Commission's decision. This appeal followed.

At the arbitration hearing held on February 17, 1982, only the claimant testified; on March 11, 1983, claimant and Dr. Schiff, his psychiatrist, testified before a member of the Commission. The following statement is taken verbatim from the statement of facts in claimant's brief:

"Phillip L. Stice was born in Chicago in 1928. He served his country in the United States Navy from 1945 to 1947. From 1949 to 1951 he attended Wilson Junior College and then in 1955 enrolled in Chicago Teacher's College from where he was graduated in 1957. That same year he took a position with the Chicago Board of Education teaching at Beale Elementary School.

Mr. Stice taught at Beal for 22 years. During that time he maintained excellent physical health—he had been a recreational boxer for several years until 1956 or 1957, and played handball three times a week from 1948 to 1978.

However, sometime during the late Summer and early Fall of 1978, Mr. Stice began experiencing deepening depression and frustration over his job, which was requiring him to become a disciplinarian rather than a teacher. Dr. Sheldon Schiff, a Board Certified Psychiatrist, testified that Mr. Stice essentially 'was teaching less and less, being insulted more and more, and being in situations which were undoing everything in increasing amounts.' He withdrew from all his social and recreational activities. Dr. Schiff testified that over a 12 to 16 month period, Mr. Stice was becoming 'more and more psychiatrically vulnerable' because of job frustrations.

During this period, Mr. Stice developed a non-disabling depression. On September 5, 1979, it became an acute suicidal depression after an 8th Grade girl slapped Mr. Stice in the face in

the Beale lunchroom. Within one week he was seen and examined by Dr. Schiff, who thereafter began seeing him weekly and then bi-weekly. Mr. Stice never returned to work.

Based on his treatment, Dr. Schiff testified that Mr. Stice suffered from a post-traumatic depressive neurosis with phobic features. He found that Mr. Stice's job frustrations had rendered him increasingly depressed and vulnerable. Dr. Schiff determined that the depression and vulnerability developed as a consequence of Mr. Stice's work environment, and that this depression, vulnerability and professional frustration in large part caused the condition for which he treated Mr. Stice. Dr. Schiff found the slapping incident to be the acute precipitating cause of his condition, *i.e.*, the 'straw that broke the camel's back.' Mr. Stice has been 'unremittingly' totally disabled since September 5, 1979.

The Board presented no evidence. It did ask Dr. Arthur Price to examine Mr. Stice prior to the hearing, but did not offer Dr. Price as a witness. As a result, Mr. Stice offered Dr. Price's report into evidence, which the Arbitrator admitted over the Board's objection. The Board made no issue on appeal of the admission of Dr. Price's report, and therefore, it can be assumed that the objection was waived. Dr. Price's report contained this conclusion:

'Then all the responsibilities and stresses of life must have come to bear upon him and he has felt a grave sense of failure only to get more responsibility and "topped" by the humiliating insult, physical and mental, inflicted by only a child, resulted in a profound depression, manifested by despair, fear and thoughts of suicide—running away. As a consequence, he has not returned to work since the incident of being struck.

He essentially is running away and withdrawing which is his usual coping mechanism.

It is my opinion that the incident did not cause Mr. Stice's depression. Certainly he has been depressed for most of his life and has been increasing to intensity during the past few years and many factors have contributed.' "

On appeal, respondent argues that the Commission's award is barred by collateral estoppel on the theory that the issue of causal connection was found against the claimant's workmen's compensation claim and that this finding, likewise, applied to claimant's occupational disease claim. In view of our disposition of this case, it is not

necessary to address the issue of estoppel.

■ First, it must be determined as a matter of law whether the claimant has established that he was exposed to the hazards and sustained an injury under section 1(d) of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1987, ch. 48, par. 172.36(d)), which states in pertinent part as follows:

> "In this Act the term 'Occupational Disease' means a disease arising out of and in the course of the employment or which has become aggravated and rendered disabling as a result of the exposure of the employment. Such aggravation shall arise out of a risk peculiar to or increased by the employment and not common to the general public.
>
> A disease shall be deemed to arise out of the employment if there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is performed and the occupational disease. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin or aggravation in a risk connected with the employment and to have flowed from that source as a rational consequence." Ill. Rev. Stat. 1985, ch. 48, par. 172.36(d).

Claimant seeks compensation under the Occupational Diseases Act for a mental disorder which began in the summer of 1978 and which continued for a period of 12 to 16 months, until September 5, 1979, when he was slapped in the face by an eighth-grade girl while he was escorting her from the room. This event precipitated a post-traumatic depressive neurosis with phobic factors. Claimant's psychiatrist found that this condition was caused by claimant's frustration and his work environment. Therefore, the issue raised is whether or not claimant's mental illness under the facts here presented qualifies as an occupational disease which arose out of and in the course of his employment and that the disease developed therefrom as a rational consequence.

Our research has disclosed three Illinois cases involving compensation claims for mental illness that were caused by conditions of employment. In *Pathfinder Co. v. Industrial Comm'n* (1976), 62 Ill. 2d 556, the claimant instructed a co-worker in the operation of a punch press and shortly thereafter, the co-worker screamed when her hand was severed at the wrist; the claimant pulled the severed hand of the co-worker from the machine and fainted; she remembered nothing thereafter until the next day when she was discharged from the hospital with a diagnosis of having had an anxiety reaction; thereafter, she tried working but ultimately terminated her employment due to men-

tal and physical problems originated with the last-described event. Our supreme court affirmed the award although the claimant sustained no physical trauma.

Claimant cites *Pathfinder* as Illinois authority that psychological disabilities are compensable and that the reasoning should apply here. In this case, the testimony of Dr. Schiff, claimant's expert, is not contradicted that the claimant's mental problems were triggered by the face-slapping event. A comparison of the facts in *Pathfinder* with the facts in this case clearly demonstrates that the event described by claimant was not the sudden severe emotional shock that the supreme court found to be compensable in *Pathfinder*. Furthermore, in *Pathfinder*, the claimant there had not been involved with an emotional depression that had developed over 12 to 16 months prior to the slapping incident. In effect, the event relied upon by claimant "as the straw that broke the camel's back" was a risk connected with claimant's employment that could or might occur in the ordinary course of events to a person engaged as a school teacher or engaged in some other pursuit.

Having determined that the physical trauma sustained by claimant does not approach the sudden, shocking event found in *Pathfinder*, we must examine this claim in comparison with other Illinois cases that involve mental disorders which were attributed to the worker's environment. In *General Motors Parts Division v. Industrial Comm'n* (1988), 168 Ill. App. 3d 678, claimant sought workmen's compensation for a mental disorder suffered after his supervisor verbally assaulted him with profane, racial slurs, calling him by highly obscene and racial names. By reason of this conduct, claimant became mentally ill and stated that he felt "less than a man" and "down graded." This court denied compensation as a matter of law, holding that the event was nontraumatic and not out of proportion to the incidents of normal employment activity. It should also be pointed out that no physical trauma was involved in that case.

Understandably, neither party here addressed *Chicago Board of Education v. Industrial Comm'n* (1988), 169 Ill. App. 3d 459 (Moore), which was filed several months after this case was argued. *Board of Education* (hereinafter *Moore*) addresses the issue of when compensation for a mental disorder allegedly emanating from on-the-job stressful conditions is allowed under the Occupational Diseases Act. There, the claimant was a 56-year-old teacher who worked for respondent, Chicago Board of Education, from June 1967 to June 1978. Claimant testified regarding a number of instances in which he was verbally and physically assaulted by students. He described a variety of work-

ing conditions which exacerbated his problems, *i.e.*, increased paperwork, unruly students, and lack of support from the school administration.

Claimant in *Moore* stated that he could not return to teaching in September 1978 because he could not physically or mentally handle returning to the stressful school environment. On cross-examination, claimant admitted that he had been discharged from the Army for psychiatric problems, which were manifested in crying outbursts and tremors. He also admitted that he had separated from his family in April 1979 due to continual arguments with his wife and children. He denied telling a psychiatrist that his wife and he fought physically.

In *Moore*, the claimant's mental disorder developed over a period of five years; it was a claim under the Occupational Diseases Act similar to the one involved here, namely, a Chicago school teacher had been exposed to many stressful incidents, including physical trauma and humiliating events. The issue determined was whether claimant had established that he was exposed to the hazards of or sustained an injury from occupational disease. The court observed that unruly students, unresponsive administration, and the burdens of record keeping were not unusual in the claimant's profession; compensation was denied by the decision of this court, holding that claimant had not established that the events creating his mental disability were out of the ordinary workplace environment.

■ Here, the claimant's proof establishes that he has a mental disorder that developed over a period of 12 to 16 months and that said illness was greatly exacerbated when he was slapped in the face by an eighth-grade girl. Nevertheless, the evidence fails to establish that this was an extraordinary event that arose from an uncommon or unusual stress situation of much greater dimensions than the experience encountered by teachers in the Chicago school system or that might be encountered in another employment-type relationship. Furthermore, the stress must be present when viewed objectively and not strictly as perceived by the claimant. As stated above, the evidence does not support an award for the petitioner in this case.

■ On-the-job stress, of itself, is not a disease. (*McGarrah v. State Accident Insurance Fund Corp.* (1983), 296 Or. 145, 675 P.2d 159.) The following excerpt from the *Moore* case at page 466, applies to this case as well:

> "To recognize that our occupational disease law would allow compensation for any mental diseases and disorders caused by on-the-job stressful events or conditions would, in the words of one court, open a floodgate for workers who succumb to the

everyday pressures of life." *Chicago Board of Education v. Industrial Comm'n* (1988), 169 Ill. App. 3d 459, 466.

Accordingly, the judgments of the circuit court and decision of the Industrial Commission are reversed.

BARRY, P.J., and McNAMARA, McCULLOUGH, and LEWIS, JJ., concur.