In re Robert Duncan for C.O.T.S. and in re Robert Duncan (Vaughn and Jean Moody, David and Karen Ely, John Brown and C.R.O.O.N.E., Appellants)

[584 A.2d 1140]

No. 90-261

Present: Allen, C.J., Dooley and Morse, JJ., and Peck, J. (Ret.) and Cashman, D.J., Specially Assigned

Opinion Filed November 30, 1990

*Portnow, Little & Cicchetti, P.C.*, Burlington, for Appellants.

*Bauer, Gravel & Watson*, Burlington, for Appellees.

**Dooley, J.** Certain neighbors of a proposed single room occupancy (SRO) facility, along with an organization called Concerned Residents and Owners of the Old North End (CROONE), appeal from an order of the Chittenden Superior Court granting a zoning permit and site plan approval to the Committee for Temporary Shelter (COTS) to convert a building at 184 Elmwood Avenue in Burlington into the SRO facility. We affirm.

The building in question has housed four apartments on the ground floor and a bingo hall on the upper floors. COTS has a contract to buy the building and proposes to convert the upper floors into SRO units, primarily to house persons in Burlington who are currently homeless. Extensive internal changes would be made to the building, including adding an access ramp and an elevator to the upper floors for persons with disabilities. The SRO units would share common kitchen and bathroom facilities and common area rooms for recreation. The residents would be required to sign one-year leases. The building would contain a twenty-four-hour-per-day on-site manager employed by COTS.

The current bingo hall is a preexisting, nonconforming use under the City of Burlington Zoning Ordinance. It operates three nights and one afternoon per week, and as many as 175

patrons attend. According to the Burlington Zoning Ordinance, the bingo operation should have forty-two off-street parking spaces. In fact, it has no parking for patrons, and they end up parking throughout the neighborhood when the hall is in operation.

COTS first sought a zoning permit from the Burlington Zoning Board. The facility falls in an R-20 Medium Residential District and under § 8(B)(9) of the Burlington Zoning Ordinance could be approved, if at all, only as a conditional use. Appellants and other neighbors [hereinafter neighbors] appeared in opposition. The Board granted conditional use approval by oral decision on September 11, 1989, followed by a written decision on October 13, 1989. COTS also went to the Burlington Planning Commission for site plan approval. That approval was granted on October 12, 1989.

The neighbors appealed both decisions to the Chittenden Superior Court. In a de novo proceeding, the court upheld the issuance of the permit and site plan approval. In its order of April 23, 1990, the court approved the application of COTS, "pursuant to the plans, specifications, and site plans admitted into evidence." The neighbors appeal from this order, raising the following claims of error: (1) conditional use approval cannot be given because the City of Burlington failed to adopt the conditional use approval standards set out in 24 V.S.A. § 4407(2); (2) the COTS facility fails to meet the off-street parking requirements of the City of Burlington, and COTS failed to seek a variance from these requirements; (3) a preexisting, nonconforming use may not be changed into a conditional use; (4) the court's findings in support of its conclusion that the facility meets conditional use standards are clearly erroneous; and (5) the approval order is deficient for failure to specify exactly what was approved.

I.

The relevant ordinance provision states, "[b]oarding and rooming houses . . . shall be permitted only if approved in advance as a conditional use by the zoning board of adjustment." Burlington Zoning Ordinance § 8(B)(9). Nowhere does the ordinance state the standards that an applicant must meet in order to receive conditional use approval. The zoning enabling statute

authorizes conditional uses in zoning ordinances "if general and specific standards to which each permitted use must conform are prescribed in the zoning regulations." 24 V.S.A. § 4407(2). The neighbors argue that in the absence of the general standards required by statute, conditional use approval cannot be given.

The identical argument was raised and resolved in *In re White*, 155 Vt. 612, 619, 587 A.2d 928, 932 (1990). In *White*, we held that since the statute requires that a municipality adopt the general standards enumerated in the statute, conditional use approval can be given under the statutory standards even if the ordinance does not repeat them. The evidence here was that the Burlington Zoning Board used the statutory standards. The trial court likewise used the statutory standards. The failure of the City of Burlington to repeat the standards in the ordinance is not grounds to deny conditional use approval.

## II.

The neighbors' second argument is that the COTS proposal fails to meet the off-street parking requirements of the Burlington Zoning Ordinance. Section 23 of the ordinance establishes the number of parking spaces that must be provided on-site or at a location within 400 feet of the site, depending on the use to be made of the building. The section comes into effect whenever a structure is "erected, altered or established." Burlington Zoning Ordinance § 23(A). The parties appear to agree that under the ordinance the number of parking spaces that would normally be required is seventeen. However, the requirements can be reduced up to fifty percent where the "regulation is unnecessarily stringent." *Id.*, § 23(E). In this case, the site has seven spaces, slightly less than half of the required amount, and additional spaces are available on nearby properties although all are more than 400 feet from the COTS building.

COTS answer to the apparent parking deficiency is that the current bingo hall is a preexisting nonconforming use that generates a far greater parking need than the COTS use will generate. From this fact, they argue that they are "grandfathered" and don't have to meet the parking requirements of the ordinance. Their argument is supported factually by a showing that

the current lack of space poses a serious problem because bingo hall patrons park throughout the neighborhood, and that if the ordinance had applied, the hall would have been required to provide forty-two on-site parking spaces. In support of their legal position, they offered the testimony of the city's assistant director for planning and zoning. He testified that where a new use needs less on-site parking than an existing use, they are considered to be "grandfathered" to the extent of the deficiency of the prior use and the city zoning staff does not demand greater on-site parking. He stated that this interpretation of the ordinance had been in effect for the full three and one-half years he had been part of the city zoning staff.

The zoning board apparently followed the staff interpretation of the ordinance. Instructions that accompany the application for zoning board action state that changes of nonresidential uses in residential neighborhoods are reviewed to insure that the "new uses will be no more detrimental or harmful to the neighborhood than the previous use." The board's approval stated:

> The proposed uses will be less adverse to the traffic in the area than was the use of the building for bingo games but because the parking is extremely limited for even the proposed uses, our approval is subject to the applicant obtaining site plan approval with special attention to the parking from the Planning Commission.

The planning commission did give site plan approval, a decision also appealed by the neighbors. The decision requires the site to have a minimum of six parking spaces. The trial court accepted the testimony of the zoning staff member and concluded that the on-site parking requirements of the ordinance do not apply to the COTS proposal because it is "grandfathered." The court specifically found that no variance was required to comply with parking requirements.

The neighbors argue that the ordinance must be construed as requiring full compliance with the on-site parking requirements whenever there is a conversion of nonresidential uses, particularly if there is internal renovation to facilitate the new use. We agree that the ordinance could be drafted to state this rule. See 24 V.S.A. § 4408(b)(1) (municipality may control changes of nonconforming uses to another nonconforming use); *Hudson-*

*Thompson, Inc. v. Leslie C. King Co.*, 361 So. 2d 541, 543 (Ala. 1978) (ordinance requires that off-street parking requirements be met whenever change of use occurs). On the other hand, the city could conclude that off-street parking is a use that is entitled to preexisting, nonconforming use status and is protected against the imposition of new zoning requirements. See *Dresner v. Carrara*, 69 N.J. 237, 240, 353 A.2d 505, 506 (1976) ("upon passage of the [parking] ordinance, the continued utilization of the property in this fashion—without off-street parking facilities—became legally protected as a nonconforming use").

The ordinance does not speak explicitly to the preexisting use issue with respect to parking. The nonconforming use section of the ordinance does not address parking. See Burlington Zoning Ordinance § 25. The parking section applies to structural alteration, but it is not clear how that term should apply to this case or whether it should be interpreted without regard to the parking need an alteration might cause. See *id.*, § 23(A). It goes on to say:

> Whenever there is an alteration of a structure or a change, extension or a conversion of a use which increases the parking requirements by 15% or more according to the standards of this section, whether individually or in the total additional parking requirements for the alteration, change, extension or conversion shall be provided.

*Id.*, § 23(A) note 4. While the provision is not a model of clarity, it seems to impose new parking requirements only in relation to the needs caused by the change of use or structural alteration. See *Off Shore Rest. Corp. v. Linden*, 30 N.Y.2d 160, 168, 282 N.E.2d 299, 303, 331 N.Y.S.2d 397, 403-04 (1972).*

---

* *Off Shore Rest. Corp. v. Linden* is very similar to this case in most respects. Although the *Off Shore* court found a very clear expression in the ordinance that off-street parking requirements apply whenever there is a change of use, it narrowly construed the requirements. Like the ordinance here, the ordinance in *Off Shore* applied where there was a structural alteration. The court defined that to mean a "'change or substitution in a substantial particular in the structure of the building itself'" so as to convert the existing building "'into a different structure.'" 30 N.Y.2d at 168, 282 N.E.2d at 303, 331 N.Y.S.2d at 403 (quoting *In re 440 E. 102nd St. Corp. v. Murdock*, 285 N.Y. 298, 308–09, 34 N.E.2d 329, 333 (1941). Finding no such alteration in the case before it, the court went on to look at a provision like that quoted in

■■ In the absence of the testimony of the zoning staff member and the position of the zoning board, we might find the on-site parking requirements fully applicable to the COTS proposal, requiring COTS to obtain more parking, reduce its parking need or seek a variance. However, we have consistently held that "absent compelling indication of error," we will sustain the interpretation of a statute by the administrative body responsible for its execution. *Vermont Camping Ass'n v. Department of Employment & Training*, 145 Vt. 630, 633, 497 A.2d 353, 355 (1985) (quoting *In re Vermont Health Service Corp.*, 144 Vt. 617, 622–23, 482 A.2d 294, 297 (1984)). We cannot find "compelling error" in the interpretation of the zoning board and staff in this case. The issue is not clearly addressed in the ordinance, and the interpretation allows for a great reduction in traffic and on-street parking without being so rigid that no reduction will occur because use conversions will be impossible in an old and built-up neighborhood.

## III.

The neighbors' third argument is that the ordinance prohibits the conversion of a nonconforming use, here the bingo hall, into a conditional use. They base this argument on § 25(A)(2) of the ordinance, which permits converting a nonconforming use only if the new use is an "allowed use under the provisions of the district in which it is situated." The argument is that the term "allowed use," which is not defined either in the ordinance or the statute, means a permitted use but not a conditional use.

■ We apply a zoning ordinance according to the plain meaning of the words and engage in further interpretation only when the plain meaning cannot be determined. See *Smith v. Winhall Planning Comm'n*, 140 Vt. 178, 183, 436 A.2d 760, 762 (1981). We may also look to the legislative purpose and, in any event, will apply common sense. See *Route 4 Associates v. Town of Sherburne Planning Comm'n*, 154 Vt. 461, 463–64, 578 A.2d 112, 114 (1990).

---

the text above and concluded that the applicant's obligation was to meet any increased parking requirements caused by the change of use. If we were to apply *Off Shore* to this case, we would conclude that there has been no substantial alteration and no increased need for on-site parking.

■ The zoning ordinance describes a boarding or rooming-house, which has obtained conditional use approval, as a use "permitted with site plan approval." Burlington Zoning Ordinance § 8(B). We have said that the difference between a conditional use and one authorized by a variance is that the former is permitted. See *Stevens v. Essex Junction Zoning Bd. of Adjust.*, 139 Vt. 297, 302, 428 A.2d 1100, 1103 (1981). Even if the term "allowed" is a synonym for permitted as the neighbors argue, we would ignore the plain meaning of the words to find that this is not an allowed use because it required conditional use approval. Nor can we think of any reason why the ordinance would permit a new boarding or roominghouse in the district, as long as it meets conditional use standards, but prohibit the conversion of an existing use into a boarding or roominghouse. Indeed, in an already-developed area, boarding or roominghouses are more likely to be created by conversion than new construction. Under the neighbors' interpretation of the ordinance, the permission given for such uses would probably be illusory.

## IV.

■ The neighbors' next argument is that certain of the findings made by the court in support of its conditional use approval are clearly erroneous. As the neighbors recognize, findings must stand unless clearly erroneous, *id.* at 303, 428 A.2d at 1103, and our standard of review of conclusions based on findings is deferential. See *Route 4 Associates v. Town of Sherburne Planning Comm'n*, 154 Vt. at 462, 578 A.2d at 113 (trial court decision upheld unless it is "clearly erroneous, arbitrary, or capricious").

The disputed findings relate to the impact the SRO units will have on the neighborhood and city services, particularly police and emergency services. The neighbors' position is that a facility for formerly-homeless persons, many of whom have drug and alcohol problems or mental disabilities, is inappropriate for a residential neighborhood. They believe that the experience with other SRO's is irrelevant because they are not located in residential neighborhoods. COTS' response is that other SRO's have caused almost no increased call for police and emergency services and have had no adverse affect on their neighborhoods, which are at least partially residential. They point to their ten-

ant selection and occupancy rules, along with the full-time presence of staff on-site, as a main reason why the neighbors' concerns are unfounded.

■ As one would expect, the evidence reflected the views and concerns of the parties. COTS offered the testimony of its director, describing its experience with its existing facility, and the testimony of the director of another program that runs an SRO, again describing the experience with the facility. The neighbors countered with the testimony of a Burlington police commander and the director of a halfway house for homeless alcoholics and addicts. The range of the evidence allowed the trial court to find that the COTS proposal would have virtually no impact on services and the neighborhood, or alternatively that it would have a great impact, as the court applied the experiences and predictions of the witnesses to the proposal. Its findings that the project would not have an adverse impact on city services or on the neighborhood are adequately supported by the evidence. There is no error.

V.

■ The neighbors' last claim of error is that the court's order is not sufficiently specific, especially since the parties submitted conflicting proposals for operating rules governing the tenants. The court's order described generally the proposal and approved the application "pursuant to the plans, specifications, and site plans admitted into evidence." The statute provides no specific form for the decision of the court in a zoning appeal. See 24 V.S.A. §§ 4471, 4472. We take the decision to mean that the court approved the project as proposed by the applicant, and it did not accept modifications proposed by the neighbors. Since the specific proposal is contained in the exhibits, as well as the testimony offered by COTS, we believe the order is sufficiently specific to ascertain what has been approved.

*Affirmed.*