### Frances Bedini v. Oakley Frost, M.D.

[678 A.2d 893]

No. 94-624

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed March 15, 1996

Motion for Reargument Denied April 3, 1996

*Ronald A. Fox* of *Biggam, Fox & Skinner*, Montpelier, for Plaintiff-Appellant.

*Phyllis G. Severance* and *Thomas P. Simon* of *McCormick, Fitzpatrick & Mertz, P.C.*, Burlington, for Defendant-Appellee.

**Allen, C.J.** Plaintiff Frances Bedini appeals the Department of Labor and Industry Commissioner's denial of her workers' compensation claim. We affirm.

Plaintiff was hired by a medical clinic in March 1992 as a medical receptionist/medical assistant. Although she had prior experience as a medical receptionist, she had never worked as a medical assistant. She expressed an interest in a career as a medical assistant, and saw the job as an opportunity for on-the-job training. When she was hired, her employer explained the duties of the job to her.

After a few weeks at the job, plaintiff's enthusiasm waned, and she began to feel the job was more than she could handle. Her employer, however, never asked her to perform duties beyond those in the job description. In July 1992, plaintiff complained about job-related stress to her physician, who was treating her for a preexisting physical condition. She never informed her employer of this stress.

Plaintiff's employer became increasingly dissatisfied with her job performance and counseled her several times about her deficiencies. In April 1993, the plaintiff requested an opportunity to meet with her supervisor to discuss her job performance. At this meeting, plaintiff's supervisor noted various problems with her job performance. Plaintiff left the meeting and did not return to work again. She again visited with her physician, who referred her to a licensed social

worker for psychological counseling. On April 12, 1993, plaintiff was hospitalized for treatment.

Plaintiff subsequently filed a workers' compensation claim, which was denied by her employer's insurer. She then filed for a hearing on the denial before the Commissioner of the Department of Labor and Industry. The Commissioner found that plaintiff was not subjected to unusual working conditions and that her injury resulted from her inability to master her job. The Commissioner denied her claim, and she then filed this appeal.

The only issue on appeal is whether the standard adopted by the Commissioner for mental injury claims is unreasonable and unjust and without legal basis. In this case, the Commissioner concluded that "in order for mental injury caused by stress at work to be compensable, a claimant must show that the stresses at work were of a significantly greater dimension than the daily stresses encountered by all employees."

■ Because the Commissioner's standard derives from her interpretation of the workers' compensation statute,[1] we review the Commissioner's standard with deference. Absent compelling indication of an error, interpretation of a statute by an administrative body responsible for its execution will be sustained on appeal. *In re Duncan*, 155 Vt. 402, 408, 584 A.2d 1140, 1144 (1990). We will not upset that interpretation unless it is unjust or unreasonable or leads to absurd consequences. *In re Verburg*, 159 Vt. 161, 165, 616 A.2d 237, 239 (1992).

■ The Commissioner's standard is supported by reasonable policy concerns. In earlier cases, the Commissioner noted that medical authorities agree that the precise etiology of most mental disorders is inexplicable. Because a mental injury could have resulted from such diverse factors as social environment, culture, heredity, age, sex, family relationships, and other interpersonal relationships, as well as employment, a high degree of uncertainty exists in the diagnosis of cause. The unusual-stress standard also permits a more objective inquiry into the cause of the injury. Greater objectivity is necessary in mental injury cases because the claimant's subjective impression that work-related stress caused her injury often forms the

---

[1] "If a worker receives a personal injury by accident arising out of and in the course of his employment . . . his employer or the insurance carrier shall pay compensation . . . to the person . . . ." 21 V.S.A. § 618.

basis for the medical opinion that the injury was caused primarily by work-related stress. See, e.g., *Seitz v. L & R Indus.*, 437 A.2d 1345, 1350-51 n.6 (R.I. 1981). Other policy considerations, not mentioned by the Commissioner, also support the Commissioner's standard. For example, it protects against nondetectable fraudulent claims and prevents the conversion of workers' compensation into general health insurance. See *Dunlavey v. Economy Fire & Casualty Co.*, 526 N.W.2d 845, 856 (Iowa 1995) (unusual stress standard effective means to prevent fraudulent claims and conversion of workers' compensation into general health insurance). Because reasonable policy concerns support the Commissioner's standard, there is no compelling indication of error in the Commissioner's interpretation of the workers' compensation statute.

Plaintiff argues that the Vermont Workers' Compensation Act does not differentiate between psychological and physical injuries. While the statute does not expressly differentiate between physical and mental injuries, the Commissioner has adopted a standard that does so because of the greater uncertainty in the diagnosis of mental injuries than in the diagnosis of physical injuries. Although plaintiff argues that "the diagnosis of physical injury is no more or less an art or science than the diagnosis of psychological injury in the field of medicine today," the Commissioner has reasonably concluded otherwise. Moreover, all but nine states treat physical and mental injuries differently and do so for the same policy reasons as the Commissioner. See 1B A. Larson, The Law of Workmen's Compensation § 42.25(g), at 7-968 (1995 & Supp. 1995). Therefore, the Commissioner's conclusion that physical and mental injuries require a different standard is not unreasonable.

Plaintiff also argues that the Commissioner's standard abandons the principle that an aggravation or acceleration of a preexisting condition can constitute an injury that is compensable under the workers' compensation statute. In *Campbell v. Heinrich Savelberg, Inc.*, we held that "the aggravation or acceleration of a pre-existing condition can constitute a personal injury by accident under the Act." 139 Vt. 31, 35-36, 421 A.2d 1291, 1294 (1980). Mental injury claimants with preexisting conditions can still receive compensation, but they, like all mental injury claimants, must show that the work-related stress was greater than that experienced by all employees. The

Commissioner's standard does not abandon the principle that claimants with preexisting conditions can receive compensation.[2]

*Affirmed.*

**Johnson, J.,** dissenting. I cannot accept the majority's brief affirmance of the standard adopted by the Commissioner for mental stress claims, both because the Commissioner, and now this Court, have departed from the statutory scheme for workers' compensation claims, and because the Commissioner's conclusions confuse, rather than clarify, the precise standard applied in stress claims. I therefore respectfully dissent. Although I believe that the final decision on this question must come from the Legislature, I would reverse this case, and remand for further explanation of the standard for stress claims, and the application of that standard to this case.

## I.

Plaintiff seeks workers' compensation benefits based on a mental stress claim. Although the majority uses the term "mental injury claim" to describe this case, this case is more specifically about the standard applied to mental stress claims. Stress claims are a subcategory of what are often called "mental-mental" claims — mental injury for which the cause is a mental or emotional, rather than physical, impact or stimulus. 1B A. Larson, The Law of Workmen's Compensation § 42.23, at 7-876 (1995). In stress claims, as the name suggests, the cause of the injury is gradual, rather than sudden. See *id.* § 42.25(a), at 7-958.

Although Vermont's workers' compensation statute does not explicitly authorize benefits for stress claims, the Commissioner has recognized such claims for some time. See *Mazut v. General Elec. Co.*, Vt. Dep't of Labor & Indus. Opinion #3-89 (1990); *Lockwood v. Vermont Dep't of Corrections*, Vt. Dep't of Labor & Indus. Opinion #20-85WC (1986). As no party in this case challenges the Commissioner's policy of granting benefits for stress claims, this Court need not review the Commissioner's overall policy. In fact, we have never addressed the issue.

Instead, squarely raised in this case is the appropriateness of the standard applied by the Commissioner to mental stress claims. The

---

[2] The Commissioner's standard actually might benefit people with preexisting psychological problems. Employers might be more inclined to hire someone with a preexisting condition if they know that they or their insurer will not have to pay a workers' compensation claim for mental injury resulting from ordinary work-related stress.

Commissioner has chosen to treat stress claims differently from other workers' compensation claims, by requiring a claimant to show not only that the injury was work-related, but also that the claimant's work experience was unusually stressful. Specifically, the Commissioner required plaintiff to "show that the stresses at work were of a significantly greater dimension than the daily stresses encountered by all employees."

I am troubled by the Commissioner's unsupported and inconsistent application of the quoted standard in this case. The opinion includes only a brief finding that plaintiff was not "subjected to any unusual working conditions," and does not explain why plaintiff did not meet this standard. Absent is a description of "normal" working conditions. I am concerned that the Commissioner has applied a standard too vague and generalized to permit a meaningful comparison. How is the average level of workplace stress to be proven? Is the level of stress described by a claimant simply measured against an unstated norm? See *Graves v. Utah Power & Light Co.*, 713 P.2d 187, 193 (Wyo. 1986) (standard requiring comparison to all employees in the working world at large "too amorphous to be practical").

Rather than evaluate plaintiff's experience against some measure of average workplace stress, the Commissioner focuses on two facts that are not directly related to the standard: first, that plaintiff was hired for a job for which she was not suited, and second, that subsequent employees taking the position were able to accomplish the job. The Commissioner's emphasis on plaintiff's unsuitability for the job is puzzling, because the Commissioner's own standard requires a showing by plaintiff only that the stresses she encountered at work were significantly greater than the daily stresses encountered by all employees. A person who is hired for a job who is not qualified may very well experience significantly greater stress than most employees.

Instead of comparing plaintiff to "all employees," however, the Commissioner apparently compared her to the employees who replaced her. Assuming that the employer hired more qualified replacements, their ability to master the job tells us little about the level of stress encountered by plaintiff. Given the broad standard for measuring unusual stress that the Commissioner has adopted, I cannot understand why the specific experience of a claimant's replacement would ever be relevant in such a case. Nor can I find any reported decision that measures a claimant's experience against that of her successor.

## II.

Unusual workplace stress has been measured in at least three different ways. See *id.* at 192 (discussing different approaches to unusual-stress standard). The approach that comes closest to what the Commissioner has actually done requires the claimant to show an unusually stressful work environment compared to other employees in the same workplace with similar responsibilities. The obvious advantage is the ease of proof — information about the comparison group is readily available. This standard, however, seems too lenient on employers. As long as all similar employees are treated equally badly, no individual employee who suffers a stress-related mental injury would have a claim. Employees in quite stressful situations could be excluded. See *id.* at 193.

Another approach, which gives more breadth to the unusual-stress standard, measures the claimant's work environment against that of all similarly situated employees, regardless of employer. See *Dunlavey v. Economy Fire & Casualty Co.*, 526 N.W.2d 845, 857 (Iowa 1995) (stress claim compensable only where workplace stress was greater than day-to-day mental stresses experienced by other workers in same or similar jobs). Proof becomes more difficult, of course, as the comparison group expands, but experts in a particular industry or field might be able to describe typical working conditions. Again, however, although for different reasons, the choice of comparison group seems unfair. A person in a job that is typically very low-stress might meet this standard easily, while a person in a particularly stressful occupation would rarely be able to show unusual stress. For example, what would an air traffic controller or homicide detective have to show to recover for mental injury caused by job stress?

Finally, some states have adopted the standard articulated by the Commissioner, requiring a showing that a claimant's work environment was unusually stressful compared to that of all employees. See *School Dist. #1 v. Department of Indus.*, 215 N.W.2d 373, 377 (Wis. 1974) (claimant must show level of stress greater than day-to-day emotional strain and tension that all employees must experience). Although this approach sounds fair, the comparison group is too large and generalized to allow for consistent and predictable application of the standard. The vagueness of the standard may have prompted the Commissioner in this case to rely instead on facts that were irrelevant but more easily grasped, including plaintiff's lack of qualifications and the success of her replacements.

I recognize the Commissioner's concern that workers' compensation benefits may not be the appropriate remedy when employees suffer stress-related mental injury because they were hired for a job for which they were not qualified. I am also concerned, however, that claimants know the standard for stress claims and understand how that standard is applied. The Commissioner has, without doubt, chosen a standard that is difficult to apply. Nonetheless, as long as the Commissioner claims to be guided by this standard, decisions on mental stress claims should reflect a meaningful comparison of the stress encountered by the claimant and the stress encountered by all employees, a comparison conspicuously absent from this decision.

## III.

Plaintiff makes a broader claim in this case, however, arguing that the Commissioner's policy of applying a different, higher burden of proof to mental stress claims is without legal basis. The Commissioner argues, and the majority agrees, that the unusual-stress standard is supported by "reasonable policy concerns." 165 Vt. at 170, 678 A.2d at 894. Specifically, the majority maintains that fraudulent mental injury claims are easier to make, because generally the only evidence of causation comes from the claimant. This argument has some merit, but its logic can be extended to various types of physical injuries as well; soft-tissue injuries and back and neck complaints are notoriously difficult to diagnose, and pain itself can be described only by the sufferer. See *Reyer v. Pearl River Tung Co.*, 68 So. 2d 442, 444-45 (Miss. 1953) (reversing denial of benefits where doctors could neither account for nor controvert claimant's complaints of pain).

In fact, fraudulent complaints are only part of the problem. Work environments that most people perceive as normal and manageable may overwhelm others. For some people, under some circumstances, the stress of any job might be enough to cause mental illness. Although such claims would not be fraudulent, these may not be the kinds of injuries that workers' compensation is intended to insure. See *Board of Educ. v. Industrial Comm'n*, 538 N.E.2d 830, 834 (Ill. App. Ct. 1989) (permitting compensation for any mental illness caused by on-the-job stressful events or conditions would open floodgate for workers who succumb to everyday pressures of life); *Townsend v. Maine Bureau of Public Safety*, 404 A.2d 1014, 1018 (Me. 1979) (under standard requiring only causal connection between conditions of employment and resulting mental disability, virtually every psychoneurotic injury would be compensable).

I agree that important policy concerns support requiring a higher standard for mental stress claims.[1] These concerns, however, must be balanced against the explicit provisions of the workers' compensation statute. Although the statute does not refer to mental injury claims of any kind, the statute does require that benefits be paid to "a worker [who] receives a personal injury by accident arising out of and in the course of his employment." 21 V.S.A. § 618. By adopting the "unusual stress" standard for stress claims, the Commissioner has determined that some injuries that "aris[e] out of and in the course of . . . employment" will not be compensated. Creating a separate category of injury, and requiring some showing other than causation, is not authorized by and is inconsistent with the workers' compensation statute. See *Candelaria v. General Elec. Co.*, 730 P.2d 470, 477 (N.M. Ct. App. 1986) (noting that statute contains no basis for applying different "arising" standard to mental injury produced by mental or emotional stimulus; changing standard for mental injury is province of legislature).

The choice between the different approaches to mental stress claims, and their relative advantages and shortcomings, is a difficult one. Granting benefits for mental stress claims, but adopting an unusual stress standard, may be the best compromise. Perhaps a better solution awaits discovery. Most troubling to me, however, is that this complex policy decision has been made by the Commissioner, rather than the Legislature.[2] Although I recognize that this Court must give deference to the Commissioner's interpretation of the workers' compensation statute, *In re Duncan*, 155 Vt. 402, 408, 584 A.2d 1140, 1144 (1990), the Commissioner has moved some distance from the underlying statutory scheme in developing the standard for stress claims. Moreover, the Commissioner has failed to provide a

---

[1] Faced with the same policy concerns, some states have chosen to deny benefits for mental stress claims altogether. See Larson, *supra*, § 42.25(d) & (e), at 7-963-64 (eight states deny compensation for mental-mental claims altogether, while seven states award benefits for mental-mental claims only where stimulus is sudden). A number of other states, however, permit recovery in stress cases whether or not the claimant encountered unusual stress. *Id.* § 42.25(g), at 7-968; see, e.g., *Wade v. Anchorage Sch. Dist.*, 741 P.2d 634, 637-38 (Alaska 1987) (stress claim analyzed in same way as any other workers' compensation claim; showing of stress greater than that in profession not required).

[2] A number of states have adopted statutory standards (some quite detailed) for mental stress claims. See, e.g., Ala. Code § 25-5-1(9) (1992); Cal. Lab. Code § 3208.3 (West Supp. 1995); Colo. Rev. Stat. § 8-41-301(2)(a) (Supp. 1995); La. Rev. Stat. Ann. § 23:1021(7)(b) & (c) (West Supp. 1995); Me. Rev. Stat. Ann. tit. 39-A, § 201(3) (West Supp. 1995).

coherent explanation of the standard or its application. Without more, I am unable to join in affirming the Commissioner's decision in this case.