STATE OF VERMONT

ENVIRONMENTAL COURT

In re Smith 4-Lot Subdivision Final Plat } Docket No. 244-12-09 Vtec
   (Appeal of Pauze) }

<u>Decision and Order on Appellant's Motion for Partial Summary Judgment</u>

Appellant E. Francis Pauze, Jr. appealed from a decision of the Development Review Board (DRB) of the Town of Poultney, granting final plat approval, with conditions, for a four-lot subdivision proposed by Applicant Howard Smith. Appellant is represented by John C. Thrasher, Esq.; and Appellee-Applicant Howard Smith is represented by Phyllis R. McCoy-Jacien, Esq. The Town of Poultney has not entered an appearance in this matter.

Appellant has moved for partial summary judgment on Questions 1 through 6 of the seven-question Statement of Questions, and asks this Court to deny the subdivision application. Appellant also asks the Court to disregard Applicant's memorandum in opposition to his motion for summary judgment, arguing that it was filed two days beyond the deadline set in the Court's scheduling order.

The scheduling order issued on February 3, 2010, in this matter allowed Appellant to file a motion for summary judgment by March 3, 2010, and further provided that "[a]ny response to a motion for summary judgment shall be filed within the time frame set forth in" the Vermont Rules of Civil Procedure. If Appellant's summary judgment motion had been filed on March 3, 2010, Applicant's response would have been due on Monday, April 5, 2010, including the three additional days allocated under V.R.C.P. 6(e) for responses to motions mailed by parties. However, Appellant's motion was filed a week early, on February 24, 2010, so that the time for

1

responses expired on March 29, 2010, also including the three additional days. Applicant's response was filed on March 31, 2010, only two days beyond the time allowed in the scheduling order, if calculated from the date Appellant's motion was actual filed, and five days <u>earlier</u> than required if calculated from Appellant's original deadline to file the motion. Under these circumstances, the Court will consider Applicant's memorandum in opposition to the motion, as well as Appellant's reply memorandum filed on April 8, 2010.

The facts stated in this decision are undisputed unless otherwise noted.

<u>Classification of Subdivision as Major</u>

Applicant proposes a subdivision to consist of four numbered lots, one containing an existing house, in a Rural Residential 1-Acre zoning district in the village of East Poultney. Only the lot containing the existing house has frontage on a public street. The other three lots do not have frontage on a public street; access to the public street for those lots is proposed over a new private subdivision access road.

The proposed subdivision access road is proposed as a private road, not as a public road. It is not proposed to be a new <u>municipal</u> street or street extension, even though it proposes a new private road. Nevertheless, the proposed subdivision falls within the review category of a major subdivision, because all the proposed lots do not have frontage on an existing public street, regardless of whether the subdivision itself requires a "new municipal street, [new municipal] street extension, or [new] municipal facilities." Town of Poultney Subdivision Regulations, art. V [hereinafter Subdivision Regulations].[1]

---

[1] The definition of "minor subdivision" requires it to be a "subdivision containing not more than four (4) lots which <u>have</u> frontage on an existing public street . . . ." Subdivision Regulations, art. V (emphasis added). By its terms, this definition requires each of the proposed subdivision lots to have frontage. That is, if the intent of the

Question 4 of the Statement of Questions asks the Court to determine whether the proposed subdivision access roadway is a "separate and distinct lot," apart from any of the four proposed single-family lots. If the Court determines that it is a separate and distinct lot, Question 5 asks whether "any of the lots created by the subdivision meet the minimum lot size required by the Town of Poultney Zoning Regulations."

However, material facts are in dispute, or at least have not been clearly provided to the Court, as to the ownership status of the roadway, as shown on the subdivision plan itself. The proposed ownership of the land lying under the subdivision access roadway as shown on the plan is somewhat inconsistent with Applicant's current description of his proposal. The outcome of the present motion, and of the application itself, depends on the way in which Applicant has configured the proposed subdivision. A series of three diagrams is appended to this decision to enable the reader better to follow the distinctions among the possible configurations.

As shown in Diagram 1, Applicant appears to be proposing that Lot 1 consists of the land lying under the right-of-way for the private subdivision access road, together with two other segments of land: the triangular piece of property containing the existing house, located northerly of the private access road, and the roughly rectangular piece of property containing the proposed replacement area for the Lot 1 septic system, located southerly of the private access road and easterly of Lot 2. If that is the configuration actually proposed by Applicant, then the parties do not dispute that Lots 1, 2, 3, and 4 each meet the minimum 40,000-square-foot lot size. Compare Appellant's Exhibits H & I (depicting Appellant's measurements), with Appellant's Exhibit A

section had been to require only that the subdivision property as a whole had to have some frontage, then grammatically the definition would have had to have stated instead that a minor subdivision is one which "has" frontage on an existing public street.

(Applicant's plot plan depicting Applicant's measurements).[2]

Such a configuration, which includes the private subdivision access road as part of Lot 1, requires that Lots 2, 3, and 4 each have an easement over Lot 1 to use the private subdivision access road in order to access to those three lots. On the other hand, if Applicant instead intends in the future to convey the land lying under the private subdivision access right-of-way to be held in common by the owners of the four subdivision lots, as is suggested by paragraph 1 of Applicant's Road Maintenance Agreement and Covenants, such a conveyance may require future subdivision approval to create a fifth lot, consisting of the land lying under the access road right-of-way. See Diagram 2.

Under those circumstances, the two resulting portions of Lot 1 would be separated by the private subdivision access road, but would have to be considered a single lot in order for Lot 1 to meet the minimum lot size requirements. No such proposal is made as part of the present application. To the contrary, it appears instead from Applicant's memorandum in opposition to the motion for summary judgment that the Road Maintenance Agreement and Covenants document is being changed. See Applicant's Opposition to Appellant's Motion for Summary Judgment, at 4 (Mar. 31, 2010) ("The Town is requiring amendments to the Road Maintenance Agreement and changes will be made by [Applicant's] now counsel in regard to wording in the Agreement."). If that document is indeed being changed, the parties should be prepared to state, at the telephone conference scheduled in the final paragraphs of this decision, whether this application needs to be remanded to the DRB for it to consider the changed configuration of the property and the new covenants document.

In addition, both of the configurations discussed in the parties' memoranda differ from what appears to be shown on the subdivision plan. Although the legend on

---

[2] Although Appellant's motion refers to the minimum lot size as being 1 acre, Article V of the Zoning Regulations defines it as 40,000 square feet.

4

the plan provided in connection with the motion for summary judgment does not define either the solid or the broken lines depicted on the plan, the plan appears to show lot lines for Lots 2, 3, and 4 that extend across the subdivision access roadway to the northerly boundary of the subdivision property. See Diagram 3. If Lots 2, 3 and 4 do in fact extend all the way across the subdivision access road to the northerly boundary of the subdivision property, then each of the lots, including Lot 1, will instead require an easement over each of the other lots in order to use the private roadway to access the public street or to access the turnaround at the other end of the roadway.

Because material facts are in dispute as to the configuration of what is actually being proposed, the Court cannot resolve Questions 4 and 5 of the Statement of Questions regarding whether each (or any) of the proposed lots meets the minimum required lot size.

Questions 1 and 2 of the Statement of Questions

Question 1 of the Statement of Questions asks the Court to determine whether the proposed subdivision access roadway is a "street" as that term is defined in the Subdivision Regulations. If the Court determines that the access roadway is a "street," Question 2 asks whether the application can comply with the Subdivision Regulations as to street construction.

The Town of Poultney Road Policy (Road Policy) establishes minimum requirements for the Town to consider taking over a road, that is, to convert it from a private roadway to a public road for which the Town is responsible. The Road Policy establishes that the Town will not take over as a public road any road that is less than 1500 feet in length and serves fewer than three houses. Town of Poultney Road Policy § IV(15). However, the Road Policy does not obligate or require the Town to take over streets that serve three or more houses or those that are longer than 1500 feet. The Road Policy also establishes the presumption that any road less than 500 feet in length is

private, id. § IV(16), but it does not state that all roads longer than 500 feet are public. Rather, it addresses the "minimum specifications for roads proposed for acceptance by the Town of Poultney as town highways." Id. § IV.

The Town is not obligated to accept streets or roads serving a subdivision as public streets. Rather, § 280 of the Subdivision Regulations makes it clear that DRB approval of a subdivision plat does not obligate the Town to take over the subdivision access road as a public street, and, if such a street is intended to become a public street, makes it clear that the DRB may require a written agreement between an applicant and the Town regulating their respective responsibilities.

In the present case, Applicant does not propose that the private subdivision access roadway be taken over by the Town as a public street. In fact, in approving the subdivision application the DRB imposed a condition that the private road remain private and that it not be not be taken over by the Town as a public street.

Appellant, however, argues that the private subdivision access roadway nevertheless falls within the definition of "street" in the Subdivision Regulations, and therefore must comply with the Town Highway specifications pursuant to § 420.8 of the Subdivision Regulations. The term "street" is defined in the Subdivision Regulations as "any road, highway, avenue, street, [or] land or other way between right-of-way lines, commonly used by the public for vehicular traffic." Although the parties have not disclosed the date of adoption of the Subdivision Regulations, those regulations evidently were adopted prior to July of 2004, as may be seen by references in the regulations to certain section numbers in the state statute that changed after that date. See, e.g., Subdivision Regulations § 170 (This provision, regarding enforcement, refers to 24 V.S.A. §§ 4444 and 4445, which were recodified at 24 V.S.A. §§ 4451 and 4452 in 2004.). By contrast, the later-adopted Zoning Regulations, which became effective in July of 2008 and are also administered by the DRB, define the term "street or road" as a "public way for vehicular traffic which affords the principal means of access to abutting

6

properties," Zoning Regulations, art. XI (emphasis added); this later-adopted definition suggests that there is a distinction between a public street and a private street.

In the present case, the Court need not reach the question of whether the internal subdivision roadways of a large subdivision qualify as "streets" under either ordinance, even if the subdivider is required or agrees to keep those roadways in private ownership. Rather, all that is before the Court in the present case the Court is whether a private right-of-way used to access three or four single-family houses is considered to be "commonly used by the public."

The Court, however, cannot interpret this phrase without the context of knowing how it has been applied by the DRB in the past or whether it has been consistently applied.[3] The only evidence that has been presented to the Court by either party on this issue, as the Town has not submitted a memorandum, is the statement by the Town's attorney during the August 2009 DRB hearing, reported in the meeting minutes as follows:

> Town Attorney Neal Vreeland commented that the road described in the application cannot be considered a 'street' as per the definition of a 'street,' and therefore there was no requirement that the access conform to Town Highway Specifications.

Because material facts are in dispute, or at least have not been provided to the Court, regarding whether the DRB or the Town have consistently applied the definition of "street" as described in the Town attorney's comment quoted above, summary judgment must be denied on Questions 1 and 2 at this time.

---

[3] See In re Champlain College Maple Street Dormitory, 2009 VT 55, ¶ 10 ("We defer to the approach taken by the City below, which appears to have been applied consistently, and we uphold the Environmental Court's conclusion that the project complies with the density requirement." (citations omitted)); In re Duncan, 155 Vt. 402, 408 (1990) (standing for the proposition that the court gives deference to interpretation of zoning ordinance by local administrative body).

Question 6 of the Statement of Questions

Question 6 of the Statement of Questions asks whether there is "sufficient clearance" to the subdivision access roadway "where one of the existing septic systems is located within the right of way and the septic system of the adjacent lot owner is closer than the minimum isolation distance from the proposed roadway or driveway."

The septic systems and water supplies for the proposed lots were approved by the Vermont Agency of Natural Resources; that permit has not been appealed. The ANR permit requires the plans submitted for that permit approval to be complied with, and prohibits construction, earthwork, or other activity within the areas reserved for the replacement areas. If the private subdivision access road is not considered a "street," and therefore does not need to be built to town highway specifications, then the traveled way of the road is not required to be as wide as claimed by Appellant and no ditches are required as claimed by Appellant, allowing the project to comply with the ANR requirements as designed and as approved by the ANR.

Because material facts are in dispute, or at least have not been provided to the Court, regarding whether the DRB or the Town have consistently applied the definition of "street" as described in the Town attorney's comment quoted above, summary judgment must be denied on Question 6 at this time.


Question 3 of the Statement of Questions

Question 3 of the Statement of Questions asks the Court to determine whether the Applicant's subdivision application conforms with § 460(B) of the Subdivision regulations, which "require[es] open space or recreation areas or the payment of an amount determined by the legislative body to be used for open space or recreation areas."

Section 460(A) of the Subdivision Regulations requires that, if a park,

8

playground, or other recreation area is shown on the municipal plan, the developer of a subdivision including that area must provide for the park, playground, or recreation area, or must pay a fee in lieu of providing it. Nothing has been provided to the Court to suggest that the Town Plan shows a park, playground, or other recreation area within the area covered by the proposed subdivision. However, if no park, playground, or recreation area shown in the Town Plan is located within the proposed subdivision, by its terms §460(B) does require the Board to impose a condition requiring the subdivider to make a payment to the Town towards a park and recreation special fund, in an amount to be determined by the Town's legislative body. It remains for trial whether the legislative body of the Town has established a schedule for such payments, or, if not, whether a mechanism and any standards exist by which the legislative body is to perform that action, and whether any such action would be separately appealable.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant's Motion for Summary Judgment is GRANTED in Part as to Question 3, and is otherwise DENIED as material facts are disputed, as follows.

As to Question 3, no park, playground, or recreation area is required to be provided under §460(B) of the Subdivision Regulations, partially resolving Question 3 of the Statement of Questions; the remainder of Question 3 remains for trial.

The remainder of Appellant's Motion for Summary Judgment is denied, as material facts are in dispute, or at least have not been provided to the Court in connection with the motion memoranda. Specifically as to Questions 1, 2, and 6 of the Statement of Questions, as discussed above, material facts have not been provided as to whether the position stated by the Town's attorney at the August 2009 DRB hearing, that the proposed private subdivision access road does not fall within the definition of "street" as that term is used in the Subdivision Regulations, is an interpretation that has been applied consistently by the DRB. Champlain College Maple Street Dormitory,

9

2009 VT 55, ¶ 10. Specifically as to Questions 4 and 5 of the Statement of Questions, as discussed above, once Applicant clarifies the configuration that is being proposed, it will be possible for the Court to rule on summary judgment as to whether the proposed lots meet the minimum lot size. The parties should be prepared to discuss at the telephone conference (see enclosed notice) whether any of these facts require trial or may instead be submitted through supplementary motions for summary judgment.

The parties should also be prepared to discuss at the telephone conference whether changes to Applicant's plans or documents warrant a remand of this matter to the DRB to act in the first instance on the revised application. The parties may wish to consult with their surveyors or other consultants in advance of the conference, or to have them available at the time of the conference, to resolve any factual questions about what is being proposed. Due to the issues of interpretation of the Town's Subdivision Regulations, a copy of this decision has been sent to the Town's attorney; if the Town will be entering an appearance, or wishes to participate as amicus, any application to do so should be filed enough in advance of the conference so that the Court can rule on it at the conference. If the matter will not be remanded, the parties also should be prepared at the conference to establish a schedule for the mediation already ordered in this case, and to discuss the length of time that would be needed for trial.

Done at Berlin, Vermont, this 30th day of April, 2010.

_____
Merideth Wright
Environmental Judge

10