### Clyde Campbell v. Heinrich Savelberg, Inc. and American Fidelity Company

[421 A.2d 1291]

No. 405-79

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed September 9, 1980

*Gary R. Brown,* Woodstock, for Plaintiff.

*Theriault & Joslin,* Montpelier, for Defendants.

Daley, J. This is a claim by a carpenter against his employer, Heinrich Savelberg, Inc., for benefits under our Workmen's Compensation Act, 21 V.S.A. ch. 9. Because the parties were unable to agree on compensation, claimant filed a "Notice

and Application for Hearing" with the Commissioner of Labor and Industry. *Id.* § 663. This document alleged that claimant had suffered aggravation of pre-existing pulmonary disease and a myocardial infarction from exposure to heavy varnish and paint fumes in a poorly ventilated workplace. After a hearing, the Commissioner issued findings, conclusions and an order which denied an award. *Id.* § 664. Claimant filed a timely appeal to the superior court, *id.* § 670, and the Commissioner certified three questions to the court, *id.* § 671. Because the second question deals with the extent of disability, an issue not contested on appeal, only questions one and three are relevant here:

> 1. Is the claimant's myocardial infarction a personal injury by accident under the Workmen's Compensation Act?
>
> . . . .
>
> 3. Was there aggravation of the claimant's pulmonary disease due to exertion and stress resulting from work in a poorly ventilated area in the presence of heavy varnish and paint fumes?

Both at the outset of the case and at the close of claimant's evidence, the employer moved to strike question # 3 essentially because it did not state a claim of personal injury by accident under the Workmen's Compensation Act. For the same reason, the employer also made a motion for a directed verdict on question # 1 at the close of the claimant's case. The court denied these motions, and allowed the case to go to the jury, *id.* § 670, which, by interrogatories, answered both questions in the affirmative. This result was certified to the Commissioner by order of the superior court, *id.* § 671, and the employer promptly appealed to this Court, *id.* § 672.

The appeal challenges the denial of employer's motions. In substance, the employer claims that the medical testimony was not sufficiently certain to support a jury finding that the fumes caused the alleged injuries; that neither the aggravation of claimant's bronchitis nor the myocardial infarction raise a legal claim for compensation because neither constitute a "personal injury by accident" within the meaning of 21 V.S.A. § 618; and that the aggravation of claimant's chronic bronchitis is an occupational disease, not a personal injury by ac-

cident, and is therefore compensable under the Occupational Disease Law, 21 V.S.A. ch. 11, but not under the Workmen's Compensation Act.

The evidence showed that in April and May of 1977 claimant was working for his employer on the construction of a large house, which was behind schedule. To speed up the job, the painters began work while some areas of the house were still being completed by the carpenters, and some of the furniture was moved into the house while this work was going on. Since the usual practice was for the carpenters to complete their work before the painters arrived, this particular job created an unusual situation in which the carpenters were exposed to fumes from paint and varnish. Furthermore, because it was necessary to close the windows to protect the furniture and fresh paint from dust, the lack of ventilation created an unusually high concentration of fumes in the air.

According to the claimant's experts, claimant had arteriosclerosis and mild to moderate chronic bronchitis prior to his exposure to these fumes. Although the evidence is somewhat conflicting, it appears that claimant was exposed to the fumes for approximately four to six weeks. By the last week of this exposure, claimant's condition had deteriorated to the point where his severe shortness of breath and increased production of sputum were consistent with a change from chronic to acute bronchitis. On May 10 and 11, claimant worked in a closed garage over open paint cans and adjacent to a hallway which was being freshly varnished. On these days claimant's condition was especially bad, and at times he had to step outside to get fresh air. At about three o'clock on the afternoon of the eleventh, claimant began experiencing severe chest pains. Although he was able to complete the day's work and to get to his doctor's office, he then suffered cardiac arrest.

█ The medical testimony of two doctors was that, to a reasonable degree of medical certainty, the fumes caused the change from chronic to acute bronchitis. Both doctors further testified that the diminished oxygen supply caused by the aggravated bronchial condition probably resulted in the death of part of the heart muscle, and the myocardial infarction. This testimony meets the legal standard of reasonable probability required of expert opinions, see *State* v. *Bishop,* 128 Vt.

221, 232, 260 A.2d 393, 400 (1969) (Holden, C.J., concurring); *Howley* v. *Kantor*, 105 Vt. 128, 133, 163 A. 628, 631 (1933), and therefore the employer's objections are not well taken on this issue.

■ The principal question raised by the employer is whether either certified question states a claim, under the evidence as developed, of personal injury by accident within the meaning of the Workmen's Compensation Act. See 21 V.S.A. § 618. For the purposes of the Act, an accident is " 'an unlooked for mishap or an untoward event which is not expected or designed.' " *Giguere* v. *E. B. & A. C. Whiting Co.*, 107 Vt. 151, 157, 177 A. 313, 316 (1935) (quoting *Fenton* v. *Thorley & Co.* [1903] A.C. 443, 448); accord, *Masterson* v. *Rutland Hospital, Inc.*, 129 Vt. 91, 92, 271 A.2d 848, 849 (1970). Certainly, it cannot be said that the aggravation of claimant's bronchitis or the myocardial infarction was either expected or designed. *Clover, Clayton & Co.* v. *Hughes*, [1910] A.C. 242, 245–46; see *Laird* v. *State Highway Department*, 112 Vt. 67, 86, 20 A.2d 555, 564–65 (1941). Furthermore, while it is common to think of an accident as an external event such as an explosion or a fall, it has long been established that an accident " 'may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel.' " *Giguere* v. *E. B. & A. C. Whiting Co., supra*, 107 Vt. at 160, 177 A. at 317 (quoting *Clover, Clayton & Co.* v. *Hughes, supra*, A.C. at 246); accord, *Laird* v. *State Highway Department, supra*, 112 Vt. at 85, 20 A.2d at 564. In this case, the experts testified that the exposure to heavy fumes constituted a new injury to the mucosa which line the bronchial tubes. This new irritant caused the severe swelling and fluid production that brought on the rapid change from a relatively stable chronic bronchitis to acute bronchitis. This injury, in turn, diminished the supply of oxygen to the heart and brought on the myocardial infarction. In short, the human frame broke down unexpectedly under work-related strain. This constitutes a personal injury by accident under the Act.

■ The fact that claimant had pre-existing bronchial and arterial diseases does not undermine this conclusion. We have long held that the aggravation or acceleration of a pre-existing

condition can constitute a personal injury by accident under the Act. *Marsigli Estate* v. *Granite City Auto Sales, Inc.*, 124 Vt. 95, 103, 197 A.2d 799, 805 (1964); *Laird* v. *State Highway Department, supra*, 112 Vt. at 86, 20 A.2d at 565; *Morrill* v. *Charles Bianchi & Sons, Inc.*, 107 Vt. 80, 87–88, 176 A. 416, 419–20 (1935).

■■  Claimant's employer places great emphasis on the argument that no accident is shown because the exposure to fumes was over an extended period of time. We have previously relied on the absence of a brief and fortuitous event to deny compensation, see *Masterson* v. *Rutland Hospital, Inc., supra*, 129 Vt. at 92, 271 A.2d at 850, but in *Masterson* the claimant contracted tuberculosis after nine months of exposure under normal working conditions. Any reading of *Masterson* to require a brief event would therefore rely on dicta, which we now disapprove. "[I]njury, to be accidental, need not be instantaneous." 1B A. Larsen, Workmen's Compensation Law § 39.20, at 7-304 (1980). In fact, as Professor Larsen notes, the trend towards recognizing longer periods as sufficiently definite has "carried the permissible duration of the cause far beyond a few hours or days, to weeks or even months in some instances." *Id.* In light of this, we find that four to six weeks of exposure to intense fumes is a sufficiently specific trauma to constitute an accident under the Act.

■  The employer's argument that claimant's affliction is an occupational disease rather than a personal injury by accident is without merit. An occupational disease is "a disease which is due to causes and conditions which are *characteristic of and peculiar to a particular trade, occupation, process or employment*, and to which an employee is not ordinarily subjected or exposed outside of or away from his employment, and which arises out of and in the course of such employment." 21 V.S.A. § 1002 (emphasis added). In discussing a statute similar to ours, the Supreme Judicial Court of Maine has said that, "[t]o be within the purview of the Law, the disease must be so distinctively associated with the employee's occupation that there is a direct causal connection between the duties of the employment and the disease contracted." *Russell* v. *Camden Community Hospital*, 359 A.2d 607, 611–12 (Me. 1976). The evidence in this case makes it clear that claimant's

exposure to fumes was unusual for the trade of carpentry, and that therefore the fume-induced acute bronchitis and myo-cardial infarction are not distinctively associated with, or characteristic of, claimant's occupation. Accordingly, contrary to the employer's contention, the claim for benefits did not properly belong under the Occupational Disease Law.

*Judgment affirmed. Let the mandate be certified to the Windsor Superior Court and to the Commissioner of Labor and Industry.*