2010 VT 19

## Henri Cyr v. McDermott's, Inc.

[996 A.2d 709]

No. 08-290

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed March 5, 2010

*Gregory P. Howe* and *Jennifer A. Wood, Law Office of Gregory P. Howe,* Newport, and *Axelrod & Adler, P.L.L.C.,* St. Johnsbury, for Plaintiff-Appellant.

*John A. Serafino* of *Ryan Smith & Carbine, Ltd.,* Rutland, for Defendant-Appellee.

*Caroline S. Earle,* Assistant Attorney General, Montpelier, for Vermont Attorney General's Office.

¶ 1. **Skoglund, J.** The workers' compensation structure in Vermont is meant to provide employees with reliable compensation for work-related injuries while limiting employer liability to legitimate harm arising out of, and in the course of, employment. Claimant Henri Cyr worked for McDermott's, Inc., a hauling company that transports milk in bulk from farms to creameries. He was employed as a part-time mechanic's helper, keeping the maintenance garage clean and occasionally servicing trucks. After accidentally drinking a caustic agent used to clean the milk trucks, he suffered severe internal chemical burns. He filed a claim for workers' compensation under Title 21, chapter 9 of the Vermont Statutes. The Commissioner of Labor granted summary judgment to employer, finding claimant was intoxicated at the time his injury occurred and, thus, compensation was not allowed under 21 V.S.A. § 649. On appeal, claimant contends the Commissioner misapplied § 649. We conclude that the Commissioner erred in failing to address the threshold question of whether there was a valid claim for workers' compensation and in barring the claim under § 649. We reverse the Commissioner's grant of summary judgment and remand for further proceedings.

¶ 2. In reviewing the facts of this case, we take them in the light most favorable to claimant, the nonmoving party below. See *Thompson v. Hi Tech Motor Sports, Inc.,* 2008 VT 15, ¶ 4, 183 Vt. 218, 945 A.2d 368. Claimant had been employed by employer for about ten years before the accident. In late April 2006, one of claimant's co-workers observed a full, apparently abandoned Mountain Dew bottle on the counter in the office and offered it to claimant. Claimant accepted the bottle, which was eventually moved to employer's refrigerator. Approximately a week later, when that refrigerator was being cleaned, the co-worker again offered the bottle to claimant, as was apparently the general custom with unclaimed food or beverages in the company's

lunch-area refrigerator; claimant then brought it home and placed it in his refrigerator. Several days later, on May 2, 2006, claimant came home from work and drank two cans of beer. He then took the Mountain Dew bottle out of his refrigerator, opened the cap and drank deeply from it. Immediately, his mouth, throat, and stomach began burning, and he was unable to swallow. He went into his bathroom and vomited and then went into his bedroom to lie down. Shortly thereafter, claimant called for his apartment neighbors to get an ambulance; he was rushed to the hospital. He was treated for extensive caustic burns to his hypopharynx, the entire length of his esophagus, and approximately two-thirds of his stomach.

¶ 3. During the course of his emergency-room treatment, hospital staff conducted blood work and a urinalysis. Although claimant denied that he was intoxicated when he drank from the Mountain Dew bottle, an expert for employer reviewed claimant's medical records and concluded that claimant's blood alcohol content (BAC) at the time he drank the caustic substance was approximately 0.15 to 0.16, roughly double the legal limit for operating a motor vehicle. 23 V.S.A. § 1204(a)(2) (listing 0.08 BAC as creating a presumption of intoxication). In rebuttal, claimant produced the affidavits of two witnesses — the neighbor who called the ambulance and the treating EMT — both stating that claimant was not exhibiting signs of intoxication around the time he ingested the caustic substance. Based on the evidence presented, the Commissioner determined that claimant was legally intoxicated when he drank from the Mountain Dew bottle. The issue of claimant's BAC is undisputed.[1]

¶ 4. On June 7, 2006, claimant filed a Notice of Injury and Claim for Compensation. Employer initially denied the claim on June 27 because claimant's injury did not "aris[e] out of employment" nor was it "sustained in [the] course and scope of employment." On October 30, employer again denied the claim on the same basis and added that "claimant was intoxicated at the time

---

[1] After the Commissioner granted summary judgment to employer, claimant filed a motion for reconsideration and proffered new expert evidence that purportedly put the fact of his BAC in issue. The Commissioner refused to consider the new evidence, viewing it as being untimely filed without cause, and claimant does not directly contest that ruling on appeal. We therefore treat the fact of claimant's BAC as undisputed for purposes of reciting the facts of the case. See *State Farm Mut. Auto Ins. Co. v. Powers*, 169 Vt. 230, 242, 732 A.2d 730, 738 (1999).

of the alleged injury which is an absolute bar to compensation. 21 V.S.A. § 649." In the subsequent appeal before the Department of Labor, both parties moved for summary judgment. In its motion, employer reasserted its position that claimant's injury did not arise out of his employment and that his intoxication was an absolute bar to any recovery. The Commissioner did not reach the issue of whether the injury arose out of and in the course of employment pursuant to 21 V.S.A. § 618(a)(1). Rather, as noted, the Commissioner found that when claimant ingested the chemical agent, his BAC was in excess of the Department's 0.08 standard for determining whether an employee is intoxicated, and, therefore, his intoxication barred recovery under the statutory defense provided by § 649. Section 649 provides three affirmative defenses for employers to avoid compensation to injured workers:

> Compensation shall not be allowed for an injury caused by an employee's wilful intention to injure himself, herself, or another or by or during his or her intoxication or by an employee's failure to use a safety appliance provided for his or her use. The burden of proof shall be upon the employer if he or she claims the benefit of the provisions of this section.

21 V.S.A. § 649.

¶ 5. On appeal, claimant argues that a compensable injury occurred when he was given the bottle containing a caustic chemical at work, and, thus, the Commissioner erred in looking to the exemptions in § 649, there being no allegation that he was intoxicated when he received the bottle. He further argues that, even if his injury occurred when he drank from the bottle, his rebuttal evidence put the fact of his contemporaneous intoxication in dispute.[2] Employer counters that claimant's injury occurred when he drank from the bottle while intoxicated, barring recovery under § 649, and that claimant's rebuttal evidence was insufficient to undermine the Commissioner's determination of intoxication.

¶ 6. For our review, the Commissioner certified only the issue of whether claimant's claim was barred by § 649. See 21

---

[2] Claimant also argues that § 649 is unconstitutional on several grounds, a contention that employer disputes on the merits and because of the narrow question the Commissioner certified for our review. Given our ruling in this case, we do not address these arguments.

V.S.A. § 672 (limiting the jurisdiction of this Court in direct appeals from Commissioner's workers' compensation decisions to consideration of questions certified to it by the Commissioner). In answering this question, we first recognize that the Commissioner erred by not resolving what must be the initial inquiry in a claim for workers' compensation — whether the worker had received a personal injury by accident arising out of and in the course of employment. Having addressed as much of this issue as we are able on the record before us, we further conclude as a matter of law that under the facts of this case § 649 is not a bar to claimant's recovery.

## I.

¶ 7. Our Workers' Compensation Act, 21 V.S.A. §§ 601-711, requires employers to compensate employees for accidental injuries "arising out of and in the course of employment." 21 V.S.A. § 618. As remedial legislation, the Act is interpreted broadly to achieve the goal of affording coverage to as many workers as possible. *In re Chatham Woods Holdings, LLC*, 2008 VT 70, ¶ 8, 184 Vt. 163, 955 A.2d 1183; *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991) ("'[O]ur workers' compensation statute is remedial in nature and must be liberally construed to provide injured employees with benefits unless the law is clear to the contrary."). Generally, the injured employee is entitled to recover workers' compensation benefits regardless of fault. See *Shaw v. Dutton Berry Farm*, 160 Vt. 594, 597, 632 A.2d 18, 19 (1993) ("'[F]ault is not an underlying element."); 2007, No. 208 (Adj. Sess.), § 1(a)(1) ("The workers' compensation program was established . . . to dispense with the concept of negligence by providing compensation to any employee who is injured on the job and to limit employers' exposure to lawsuits for negligence in the workplace.").

¶ 8. The principle, and initial, requirement for compensation eligibility is found in 21 V.S.A. § 618, which conditions the payment of compensation to a worker on a finding that the claimed personal injury arose out of *and* in the course of employment. See *State v. Great Ne. Prods., Inc.*, 2008 VT 13, ¶ 11, 183 Vt. 579, 945 A.2d 897 (mem.) ("'[An employer] is liable for workers' compensation benefits . . . only if a claimant can prove that the injury was the result of an accident arising out of and in

the course of the claimant's employment."). In this case, employer initially denied the claim because claimant's injury did not arise out of employment. This is the correct starting point in a workers' compensation case. Whether there is a valid claim must be determined before one looks at the statutory exemptions to compensation.

¶ 9. It is the claimant, as plaintiff in the action, who shoulders the burden of proving that both the elements of compensation eligibility are met in the first instance. *Miller v. IBM Corp.*, 161 Vt. 213, 214, 637 A.2d 1072, 1072-73 (1993) ("[A] claimant must prove both that the accident (1) arose out of the employment, and (2) occurred in the course of the employment."); *Greenfield v. Cent. Vt. Ry.*, 114 Vt. 440, 442, 48 A.2d 854, 855 (1946) ("To be compensable an injury must be the result of an accident to an employee, arising out of and in the course of his employment. The claimant here [employee's widow] has the burden of showing a causal connection between the accident which caused decedent's death and his employment." (citations omitted)). Only after this hurdle is surmounted does the burden shift to the employer to show that an affirmative defense, as provided in § 649, bars compensation. In relevant part, § 649 states that "[c]ompensation shall not be allowed" if the claimed injury was caused by or during a series of prohibited acts. *Id.* This plain language requires a finding that a worker is entitled to compensation *before* these exemptions come into play. See *Scott v. Hughes*, 132 P.3d 889, 897 (Kan. 2006) ("Whether certain conduct arises out of the scope and in the course of employment is the threshold question . . . . Whether an employer can advance a viable defense to workers compensation liability . . . is among later questions to be addressed once it is established that conduct arises out of and in the course of employment.").

¶ 10. The question of "arising out of or in the course of" employment has been well litigated. In Vermont, we subscribe to the "positional-risk doctrine" which mandates that "an employee's injury arises out of employment 'if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed the claimant in the position where claimant was injured.'" *Miller*, 161 Vt. at 214, 637 A.2d at 1073 (quoting *Shaw*, 160 Vt. at 599, 632 A.2d at 20); see also *Shaw*, 160 Vt. at 597, 632 A.2d at 19 (overruling *Rothfarb v. Camp Awanee, Inc.*, 116 Vt. 172, 176, 71

A.2d 569, 572 (1950), which required showing probable cause, because that case was not "true to the remedial purpose of workers' compensation" and "gave too narrow a meaning to 'arising out of employment' ").

¶ 11. Under positional-risk analysis, courts recognize that even when an injury occurs away from the workplace, its cause can be distinct in both time and space. For example, in *Daniello v. Machise Express Co.* an employee was splashed with jet fuel during the course of his work and, upon returning home, suffered severe burns when he struck a match in order to light his trash incinerator. 289 A.2d 558, 559 (N.J. Super. Ct. Law Div. 1972), *aff'd*, 299 A.2d 423 (N.J. Super. Ct. App. Div. 1973) (per curiam). In ruling for the claimant, the court found his injury arose out of and was causally connected to the course of his employment. *Id.* at 560-62. Similarly, in *Lujan v. Houston General Insurance Co.*, a painter, soaked with paint, paint-thinner, and gasoline during the work-day, was burned on returning home when the pilot light of his water heater ignited the fumes on his body. 756 S.W.2d 295 (Tex. 1988). The Texas Supreme Court held that his injury arose out of employment even though it occurred at home. *Id.* at 297-98.

¶ 12. Consequently, we find that claimant was put in a "positional-risk" situation when he was given the bottle containing the industrial cleaning agent at work which put the mechanism of his injury in motion. His consumption of the caustic chemicals, several days later, followed logically from his receipt of the bottle of what he understood was a soft drink. Thus, for the purposes of determining whether his injury arose out of his employment, we hold that, but for his employment, the instrument of his injury would never have arrived in his hands. Therefore, it arose out of his employment.

¶ 13. The second half of the inquiry — whether claimant's injury was within the course of employment — generally "tests work-connection as to time, place and activity; that is, it demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 12.01, at 12-1 (2009). This is largely a fact-intensive analysis, one we cannot undertake upon the record before us. We thus remand the case to

allow the parties to fully address this issue and for the Commissioner to rule upon it.

## II.

¶ 14. Because it is possible that an analysis of § 649 will arise on remand, we turn now to the certified question and an examination of this exception to the general compensation scheme. Rather than undertake the threshold analysis required under § 618, the Commissioner relied solely on § 649 to grant judgment in employer's favor and deny claimant recovery. This Court reviews grants of summary judgment de novo, employing the same standard used in the court below. *Letourneau v. A.N. Deringer/Wausau Ins. Co.*, 2008 VT 106, ¶ 7, 184 Vt. 422, 966 A.2d 133. Summary judgment is appropriate when a party has demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3); *Letourneau*, 2008 VT 106, ¶ 7. While we review questions of law de novo, because "the Commissioner has been entrusted by the Legislature with the administration of the workers' compensation program, we owe substantial deference to her initial interpretation and application" of the workers' compensation statutes. *Letourneau*, 2008 VT 106, ¶ 8. Therefore, while we require the Commissioner's conclusions to reflect "the correct interpretation of the law[,]" we will uphold the Commissioner's construction of the workers' compensation statutes "absent a compelling indication of error." *Morin v. Essex Optical/The Hartford*, 2005 VT 15, ¶ 4, 178 Vt. 29, 868 A.2d 729 (quotations omitted). Even under this deferential standard, we conclude that the Commissioner's interpretation and application of § 649 was incorrect.

¶ 15. The manner in which we interpret statutes is well established. "[T]he bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature." *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (quotation omitted). To determine legislative intent, we first presume that the Legislature intended the plain meaning of the statute. *In re Ambassador Ins. Co.*, 2008 VT 105, ¶ 18, 184 Vt. 408, 965 A.2d 486. Where "the literal meaning of the words is inconsistent with legislative intent" and the "precise wording of a statute produces results which are manifestly unjust, absurd, unreasonable or unintended, or conflicts with other expressions of legislative intent," legislative intent must prevail.

*Delta Psi*, 2008 VT 129, ¶ 7 (quotations omitted). We can determine intent "from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences." *Id.* (quotation omitted).

¶ 16. Section 649 includes three separate categories of misconduct that can bar an injured worker's recovery. Beyond excluding injuries "caused . . . by or during . . . intoxication," the statute provides employers with a defense for injuries caused by an employee's "wilful intention to injure himself, herself, or another," and injuries caused by an "employee's failure to use a safety appliance provided for his or her use." These latter two exemptions are forms of malfeasance, and including the intoxication provision amidst them suggests that the Legislature viewed workplace intoxication as another form of misconduct for which an employee could not receive injury compensation, regardless of whether an injury was caused because of the intoxication or merely caused during the intoxication.

¶ 17. Our interpretation of this statute centers on the term "cause," as this word modifies the two scenarios in which the intoxication exemption of § 649 may apply. When used in a statute, "cause" is generally understood to mean proximate cause. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 536-37 (1995). This general rule holds true when "cause" appears in the intoxication defenses that are often part of workers' compensation statutes. See *Smith v. Workers' Comp. Appeals Bd.*, 176 Cal. Rptr. 843, 847-48 (Ct. App. 1981) (holding that "caused by . . . intoxication" refers to proximate cause); see also *Kinsey v. Champion Am. Serv. Ctr.*, 232 S.E.2d 720, 723 (S.C. 1977) ("[I]n order for intoxication to be a bar to recovery it must be the proximate cause of the injury." (citing *Reeves v. Carolina Foundry & Mach. Works*, 9 S.E.2d 919 (1940))); *VanSteenwyk v. Baumgartner Trees & Landscaping*, 2007 SD 36, ¶ 12, 731 N.W.2d 214 (interpreting statute denying compensation for any injury "due to . . . intoxication" as referring to proximate cause); Larson, *supra*, § 36.03[3][a], at 36-23 to 36-24 (reciting the same). In fact, the major disagreement in decisions addressing this exemption has been whether the intoxication must be the sole proximate cause or merely a major or primary cause. See *Smith*, 176 Cal. Rptr. at 847-48.

¶ 18. While it may seem at odds with the "no fault" regime of workers' compensation to include a heavily litigated tort

concept like proximate cause in what is meant to be a simple statutory remedy, the analysis is necessary for determining the applicability of the § 649 exclusions. As noted above, in interpreting our "remedial" workers' compensation statute, we construe it liberally "to provide injured employees with benefits unless the law is clear to the contrary." *Surdam*, 156 Vt. at 590, 595 A.2d at 266. A proximate cause analysis is not necessary in determining whether a worker is eligible for coverage; however, to be precluded, an employer must affirmatively show that intoxication played a role in causing the injury, either actively — "caused by" — or passively — "caused during." See *VanSteenwyk*, 2007 SD 36, ¶ 12. This interpretation of § 649 carries out the Legislature's intent to void compensation resulting from certain types of malfeasance. Moreover, to understand "cause" in § 649 to mean nothing more than "occur" creates a distinctly unjust and absurd outcome by barring lawful recovery for those workers whose injuries manifest outside the job. Cf., e.g., *Campbell v. Heinrich Savelberg, Inc.*, 139 Vt. 31, 34, 421 A.2d 1291, 1293 (1980) (carpenter's heart attack caused by several weeks of exposure to fumes while at work). To uphold the legislative intent of barring recovery in cases of worker malfeasance without precluding other worthy claimants, determining the causal relationship between any malfeasance and the claimed injury is vital.

¶ 19. As explained above, in workers' compensation cases, we recognize that even when an injury occurs away from the workplace, its cause can be distinct in both time and space. Here, we find that claimant's injury arose out of his employment when he accepted the bottle containing the caustic chemicals. That act put the mechanism of injury in motion. This is not to suggest that his injury was inevitable once he received the bottle or that no superseding, intervening factor — such as intoxication — could have prevented his injury or altered its mechanism. However, no one suggests he was intoxicated at that time.[3] Drinking what he believed to be a soft drink several days later was akin to the fuel-truck driver in *Daniello* innocently lighting his incinerator;

---

[3] Employer makes no claim that claimant drank from the Mountain Dew bottle *because* of his state of intoxication on May 2, 2006. Indeed, it would be hard to imagine how it could so claim when the witnesses who were with claimant either before or immediately after he ingested the caustic chemical — a neighbor and the attending EMT — submitted affidavits to the Commissioner testifying to claimant's apparent sobriety.

his injury would not have occurred had not his employment created the dangerous condition.

¶ 20. Our resolution of this issue makes it unnecessary to address the balance of the parties' arguments. We reverse and remand to the Commissioner for a determination of whether claimant's injury occurred in the course of his employment.

*Reversed and remanded.*

¶ 21. **Reiber, C.J.,** dissenting. This case is an example of the adage: "Exceptional cases must not be permitted to beget bad law." *Downer v. Battles*, 103 Vt. 201, 204, 152 A. 805, 806 (1931). Although I am sympathetic to claimant's position, I cannot agree with the majority's decision, which discards the language of the statute to avoid exclusion of claimant's injury. The plain statutory language of 21 V.S.A. § 649 directs that an employee may not recover workers' compensation benefits when his injury was caused "by or during his or her intoxication." The majority's interpretation focuses on the caused "by" language, but largely ignores the caused "during" language. I believe we must give effect to the full statutory language to properly implement the Legislature's intent. Thus, I dissent from the majority's construction of § 649. I would affirm the Commissioner's decision that because claimant's injury was caused during his intoxication, claimant is barred from recovering compensation.

¶ 22. At the outset, it is important to acknowledge two underlying considerations, which, although they permeate the case, are not directly addressed by the majority. The first is that the facts of this case are unusual and extreme. The injury claimant suffered can be described as nothing other than horrific. No one can read these facts without feeling sympathy for claimant. Moreover, the circumstances in which he suffered this injury are atypical in that although claimant consumed alcohol prior to the injury, he did so at home and his alcohol use was not a cause of the injury which also happened at home.

¶ 23. The second underlying issue is that Vermont's intoxication exemption is unique. As noted, Vermont's workers' compensation statute disallows compensation for "an injury caused . . . by or during [an employee's] intoxication." 21 V.S.A. § 649. In contrast, although most states' workers' compensation statutes exempt or reduce coverage based on a defense of intoxication, these provisions all require some causal relationship between an employee's

intoxication and the injury.[4] The closest analog to our statute is the Texas statute, which states that an injury is not compensable if it "occurred while the employee was in a state of intoxication." Tex. Labor Code Ann. § 406.032(1)(A). Thus, in Texas, it is sufficient for the employer to defeat the claim by demonstrating that the employee was intoxicated at the time he sustained the injury, and there is no additional requirement that the intoxication caused the injury. See *Tex. Indem. Ins. Co. v. Dill*, 42 S.W.2d 1059, 1060 (Tex. Civ. App. 1931) (construing earlier version of statute and holding that once employer proved that employee sustained injuries while intoxicated, employer was not required to demonstrate that the intoxication proximately caused the injury).

¶ 24. These two underlying considerations combine to create a difficult situation. Claimant has suffered a horrible injury, and we must determine whether the facts of his injury meet the standards set out in the workers' compensation statute without the benefit of precedent or case law construing analogous provisions from other states. Plainly, our statute does not require a causal connection between an employee's intoxication and his injury. Under our statute therefore some claimants may be denied coverage for an injury that, absent the claimants' unrelated intoxication, would have resulted in coverage. This is one such case. While this result may appear unfair,[5] it is not our task to measure the relative fairness of the result, but to determine if it

---

[4] Other states' statutes vary in the description and degree of causation that an employer must demonstrate; such phrasing includes proximate cause, sole cause, major cause, and substantial cause. 1 A. Larson & L. Larson, Larson's Workers' Compensation Law § 36.03[1], at 36-19 to 36-21 (2009).

[5] Indeed, Professor Larson strongly criticizes statutes that require no causal link between intoxication and injury, observing that:

> [T]his type of statute is as foreign to compensation principle as anything could be. It can only be described as a sort of special penal prohibition measure applicable exclusively to employees. Other people may be punished for drunkenness by small fines or a night in jail, but if it can be proved that a worker was intoxicated when blinded by an explosion on the premises, although the worker would have been blinded just the same if sober, the penalty is the loss of compensation rights, not to mention common-law rights, running into many thousands of dollars. Such statutes, whether phrased in their present form by inadvertence or intent, are preposterous, and should be speedily amended before they work some such staggering injustice.

Larson, *supra*, § 36.03[2], at 36-22.1–36-23. Despite this strong criticism, however,

is the result the Legislature intended when it enacted the statute. "If the provisions of a statute are unfair or unjust, the remedy is by a change of the law itself, to be effected by the legislature, and not by judicial action in the guise of interpretation." *State v. Racine*, 133 Vt. 111, 114, 329 A.2d 651, 653 (1974) (quotation omitted). In my view, the plain language of the statute directs that coverage will be denied where the injury was caused during an employee's intoxication. Because employer in this case demonstrated that claimant was intoxicated when he caused his injury by drinking the caustic substance, I would affirm the Commissioner's denial of coverage.

¶ 25. My decision rests on the language of the statute, which states that "[c]ompensation shall not be allowed for an injury caused . . . by or during [an employee's] intoxication." 21 V.S.A. § 649. Our interpretation of a statute is foremost guided by the language the Legislature employed. "We presume that the Legislature intended the plain, ordinary meaning of the language, and if the meaning of that language is plain on its face, we normally ascertain legislative intent solely from the statutory language." *In re Handy*, 171 Vt. 336, 341, 764 A.2d 1226, 1233 (2000). "[A]lthough application according to the plain language is preferred when possible, the letter of a statute or its literal sense must yield where it conflicts with legislative purpose." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986). "[W]e operate on the presumption that no unjust or unreasonable result was intended by the legislature." *Id.* at 50, 527 A.2d at 228.

¶ 26. In the arena of workers' compensation, we must interpret the provisions of the statute with two important overall policy considerations in mind. First, the statute's directive that "[a]ll process and procedure under the provisions of this chapter shall be as summary and simple as reasonably may be." 21 V.S.A. § 602. Second, we must be mindful that "our workers' compensation statute is 'remedial in nature and must be liberally construed to provide injured employees with benefits unless the law is clear to the contrary.' " *Murray v. Luzenac Corp.*, 2003 VT 37, ¶ 4, 175 Vt. 529, 830 A.2d 1 (mem.) (quoting *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991)). Even given our policy of liberal construction, we have not hesitated in the

---

the suggested remedy for the situation is through legislative amendment, not judicial action.

past to limit application of the workers' compensation statute where such limitation was directed by the statute's plain language. See *Wolfe v. Yudichak*, 153 Vt. 235, 239, 571 A.2d 592, 594-95 (1989) (holding that under the "literal and plain meaning of the language of the statute" workers' compensation did not apply to volunteer firefighter who was injured when responding to a call). We have also observed that "neither we, nor the Commissioner, has the ability to expand benefits beyond those provided by the Legislature." *Gintof v. Husky Injection Molding*, 2005 VT 8, ¶ 8, 177 Vt. 638, 868 A.2d 713 (mem.).

¶ 27. The Commissioner has interpreted the during language of § 649 to mean that "the fact of a Claimant's intoxication at the time of injury is an absolute bar to recovery, even if there is no causal relationship between the two." Thus, in this case, the Commissioner determined that claimant could receive no benefits because he was intoxicated at the time the injury took place — when he drank from the bottle.[6]

¶ 28. The majority rejects the Commissioner's interpretation as at odds with the statute's overall remedial purpose and instead holds that intoxication must proximately cause the injury for there to be no coverage. The majority concludes that claimant's injury arose out of his workplace act of taking the bottle home, and therefore a proximate cause of claimant's injury was also when defendant brought the bottle home. Because claimant was not intoxicated at the time he brought the bottle home, the majority reasons, § 649 does not bar coverage.

¶ 29. I have two problems with this interpretation. First, it conflates the concepts of whether an injury arose out of a claimant's employment, 21 V.S.A. § 618(a)(1), and whether intoxication proximately caused an injury, *id.* § 649; and, second, it gives the same meaning to the caused by and caused during language in the statute. On the first point, I agree that under our positional-risk doctrine claimant's injury arose out of his employ-

---

[6] The Commissioner has adopted 23 V.S.A. § 1204(a)(2) as the standard for intoxication, and therefore presumes that a worker with an alcohol concentration of 0.08 or more is intoxicated. See *Brailsford v. Time Capsules & Wausau Ins. Co.*, Op. No. 12-00WC (Vt. Dep't of Labor May 17, 2000), available at http://www.labor.vermont.gov/Default.aspx?tabid=957. I do not address the question of whether this is a permissible presumption because claimant stipulated that his alcohol concentration was above 0.08 and did not challenge the Commissioner's adoption of this standard.

ment because taking the bottle home put him in a position to be injured. *Clodgo v. Rentavision, Inc.*, 166 Vt. 548, 551, 701 A.2d 1044, 1046 (1997) ("An injury arises out of employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he or she was injured."). I also accept that caused by intoxication in § 649 refers to proximate cause. I disagree, however, that these two determinations are the same. When we adopted the positional-risk analysis to determine if an injury arose out of a claimant's employment, we emphasized that it differed from a traditional proximate cause analysis. *Shaw v. Dutton Berry Farm*, 160 Vt. 594, 596-99, 632 A.2d 18, 19-20 (1993). We rejected the use of proximate cause as being "too narrow" for determining which injuries arise out of a claimant's employment. *Id.* at 597, 632 A.2d at 19. Thus, the question of what act proximately caused claimant's injury is different than the question of whether claimant's injury arose out of his employment.

¶ 30. In this case, although claimant's injury was initially caused by his act of bringing the bottle home and thus arose out of his employment, claimant's injury was also caused by his act of drinking from the bottle. Our cases involving proximate cause recognize that there can be "more than one act of negligence, each a proximate cause, [that] may combine to produce an injury." *Tufts v. Wyand*, 148 Vt. 528, 530, 536 A.2d 541, 542 (1987). I believe we must consider both of these events in our analysis of § 649 since they both contributed to the injury.

¶ 31. On the second point, the majority's construction of the statute essentially reads "during" out of the statute. I believe the Legislature inserted the word "during" for a reason, and I cannot agree with the majority's interpretation which makes this language meaningless. See *Racine*, 133 Vt. at 114, 329 A.2d at 654 ("[W]e must presume that all language is inserted in a statute advisedly."); see also *State v. Phillips*, 142 Vt. 283, 286 n.1, 455 A.2d 325, 327 n.1 (1982) (rejecting interpretation that would read two statutory clauses as "synonymous" because it would render one clause "mere surplusage").

¶ 32. The majority's sole attempt to define "during" is its statement that this language means "an employer must affirmatively show that intoxication played a role in causing the injury, either actively — 'caused by' — or passively — 'caused during.' " *Ante,* ¶ 18. I fail to understand how the concept of passive

causation applies in this context. The term usually is used in situations involving multiple tortfeasors and "refers to situations where the conduct of one tortfeasor was considered to be the primary, or 'active' cause of damage to the plaintiff, and the conduct of the other tortfeasor was considered to be a secondary, or 'passive' cause of damage." *Sabena Belgian World Airlines v. United Airlines, Inc.*, 773 F. Supp. 1117, 1122 (N.D. Ill. 1991). I have found this distinction applied in the workers' compensation arena in only one context — where intoxication was an aggravating factor, but not the sole cause of the injury. For example, in *Wills v. Penn Dell Salvage, Inc.*, 274 A.2d 144 (Del. Super. Ct. 1971), a mechanic's jaw was broken when he attempted to remove scrap wire under a car and the car moved a short distance. Because of the worker's intoxicated condition, he was unable to "rid himself of the blood dripping into his throat," and he died. *Id.* at 145. The facts indicated that the initial injury was not caused by intoxication, but that if the employee was sober he would not have died. In awarding benefits, the court concluded that "benefits are not to be denied merely because the injury flowing from a nonintoxication caused accident are increased by the employee's intoxicated state. . . . [T]he employee's intoxication must be an active proximate cause of the injury, not a passive condition which aggravates an injury otherwise caused." *Id.*

¶ 33. If the question before us was whether the Legislature intended to bar recovery for injuries caused solely by intoxication, rather than those in which intoxication was merely a contributing cause, this distinction may have some relevance. That is not, however, the question presented to us in this case. The statute excepts from coverage injuries caused during intoxication, and I believe we must implement this plain language. Under the undisputed facts of this case, claimant cannot recover compensation for his injuries. The facts demonstrate that claimant was intoxicated during the time he drank from the bottle and caused his injury.[7]

---

[7] I note that the Commissioner's interpretation is not exactly consistent with the statutory language. The Commissioner excludes compensation for an injury that occurs during intoxication, whereas the statutory language excludes coverage for injuries that are caused during intoxication. Thus, the Commissioner's interpretation focuses on whether an employee was intoxicated at the time of injury, but the statute directs that the focus should be on whether an employee was intoxicated during the cause of the injury. This distinction is not critical in most cases because most of the time an injury is caused and occurs at the same time. In some cases,

¶ 34. In sum, it is up to the Legislature to enact a statute that properly balances the relevant policy considerations. The Legislature has a legitimate interest in preventing intoxication, and in providing rules that are easy to implement, and we must apply the clear meaning of statutes that articulate the Legislature's judgment to the cases that come before us. While generally I do believe that the provisions of the workers' compensation statute are remedial and must be read broadly to provide for compensation, we cannot rewrite sections of the statute to conform to what we deem to be the most important policy concerns. See *Wolfe*, 153 Vt. at 239, 571 A.2d at 594-95. Therefore, I dissent.

¶ 35. I am authorized to state that Justice Burgess joins this dissent.

---

however, while the cause of the injury occurs at one moment in time, the injury itself may not manifest immediately. Although claimant urges that this is such a case, the facts indicate otherwise. As explained, there were multiple causes of claimant's injury, one of which was his act of drinking the caustic chemical. Because claimant was intoxicated during this event, he cannot receive benefits for his injury.