2011 VT 129

**Stacey COLSON v. TOWN OF RANDOLPH, Vermont League of Cities and Towns**

[35 A.3d 1065]

No. 10-245

¶ 1. November 18, 2011. This is a case of avoidable error and its consequences. The Vermont League of Cities and Towns (VLCT), the workers' compensation insurance carrier for the Town of Randolph, settled a compensation claim of claimant Stacey Colson and paid the settlement amount to the Office of Child Support (OCS) pursuant to a trustee process that OCS had issued to collect claimant's back child support payments. The error was that VLCT failed to deduct the amount of an attorney's fee lien granted by the Commissioner of the Department of Labor (DOL) to claimant's lawyer. VLCT acted with the understanding that the lawyer would not seek the fee if, as occurred, claimant was awarded a lump-sum compensation amount. The lawyer seeks her fee, but VLCT resists double paying that amount, and the dispute has ended up here after two decisions from the Commissioner and one from the Washington Superior Court. Claimant appeals from the Commissioner's grant of summary judgment to defendants, in which the Commissioner concluded that

VLCT acted appropriately in paying over the entire proceeds of claimant's workers' compensation award to OCS. Claimant argues that his attorney's lien had priority over OCS's claim for child support arrearages. He claims that the Commissioner's findings are incomplete and contradictory, that the Commissioner erred when she determined his attorney's lien did not have priority, and that DOL should be compelled to enforce his attorney's lien for fees. For the reasons discussed herein, we affirm.

¶ 2. The following material facts are not in dispute. Claimant hired his attorney to represent him in his workers' compensation proceeding against VLCT, after he sustained a work-related injury as a fireman for the Town of Randolph. On June 8, 2005, claimant and his attorney agreed to terms of representation including a fee agreement. Under that agreement, the attorney was to be paid 25% of the claimant's award.

¶ 3. Claimant owed back child support in two pending family court proceedings at the time he filed his workers' compensation claim — an arrearage of $11,222.66 from a 1998 case and another arrearage of $8662.91 from a 2001 case. On April 8, 2005, OCS issued two "Summons to Trustee for Administrative Trustee Process" to VLCT in accordance with 15 V.S.A. § 799, notifying VLCT of its obligation "to secure and hold [claimant's] assets in its possession" up to the amounts of the back child support. If the trustee process was uncontested, VLCT was to tender the assets to OCS. On October 12, 2006, OCS notified claimant's attorney that it had "filed liens" with VLCT "with regard to [claimant's] two child support cases."

¶ 4. In order to secure payment of her own fees, claimant's attorney obtained an attorney's lien in the workers' compensation proceeding. Prior to securing her lien, claimant's attorney had a telephone conversation with an attorney at OCS to ascertain whether OCS would honor an attorney's lien granted by DOL — allowing the attorney to collect her fees prior to disbursement of the settlement funds to OCS. OCS informed her that it was routine practice to honor an attorney's lien in place prior to disbursement of a workers' compensation settlement. Claimant's attorney wrote to DOL on December 18, 2006, acknowledging that OCS had "perfected a lien on any settlement due" claimant from the workers' compensation case and notifying DOL that OCS had instructed her to file her fee agreement with DOL so that her fees could be paid before a distribution was made to OCS. The attorney failed to copy VLCT on this letter.

¶ 5. DOL granted the attorney's request for a lien, and it copied VLCT on a letter sent January 4, 2007, stating that the lien had been granted. To enforce the lien, the attorney was required to present DOL "with an itemized statement detailing both the work [she] performed and the hours billed." She complied with this requirement, sending itemized invoices to DOL on January 20, 2007.

¶ 6. On April 13, 2007, claimant executed a DOL Form 22 Agreement for Permanent Partial Disability Compensation. In her cover letter sending the agreement to VLCT, claimant's attorney noted that she was requesting a lump sum payment and asked VLCT to inform DOL that it did not object to such a payment. Also on April 13, the attorney wrote to DOL, requesting a lump sum distribution of claimant's settlement as follows:

> I am writing to request that [claimant's] permanent partial settlement be distributed in a lump sum.
>
> In my request for lump sum distribution, pursuant to Rule 19, I suggest the following as support for my request:

1) The settlement is going to be distributed to the Office of Child Support toward Mr. Colson's child support arrearage.

2) If the Department determines that a lump sum is not appropriate, we request that you distribute 20% of the lump sum payment for payment of Mr. Colson's attorney's fees as he cannot pay these fees otherwise.

The attorney copied VLCT's adjuster on this letter.

¶ 7. On April 17, 2007, VLCT executed claimant's Form 22 and submitted it to DOL with a letter stating that claimant's attorney "is requesting a lump sum payment and asking that the check be made to the Office of Child Support." VLCT did not copy the attorney on this letter. VLCT had apparently interpreted the attorney's April 13 correspondences as indicating that the attorney requested that her attorney's fees be paid from the settlement money only if the full lump sum request was not granted. DOL subsequently approved the Form 22 agreement and the lump sum payment request, and on May 22, 2007, VLCT wrote a check to OCS for the entire settlement amount of $9784.63.

¶ 8. Upon learning of VLCT's payment of the full settlement to OCS, claimant's attorney requested that DOL enter an order against VLCT to enforce her attorney's lien. This request was denied. In a formal hearing on the issue, DOL again denied the attorney's request, interpreting her April 13, 2007 letter to DOL as a constructive waiver of her fees should the lump sum request be granted. Claimant appealed to the Superior Court, Washington Civil Division, which reversed the DOL ruling,[1] granting summary judgment to claimant on the waiver issue and remanding the case to DOL to consider VLCT's other defenses based on the priority of the attorney's lien compared to OCS's child support arrearage claims.

¶ 9. On remand, the DOL Commissioner again granted summary judgment in favor of defendants. The Commissioner held that OCS is not required by statute to honor attorneys' liens and that by failing to ensure that VLCT was aware of an alternative priority arrangement agreed to with OCS, claimant's attorney failed to secure priority for her lien. The Commissioner concluded that "VLCT acted appropriately in paying over the entire proceeds of Claimant's workers' compensation award in accordance with OCS' trustee process summons." Claimant appeals this decision.

¶ 10. Our review on appeal is limited to questions of law certified by the DOL Commissioner. 21 V.S.A. § 672; *Cyr v. McDermott's, Inc.*, 2010 VT 19, ¶ 6, 187 Vt. 392, 996 A.2d 709. We have held that, under this limited review, "[w]e are bound by the Commissioner's findings so long as they are supported by the evidence." *Cehic v. Mack Molding, Inc.*, 2006 VT 12, ¶ 6, 179 Vt. 602, 895 A.2d 167 (mem.). We will affirm if "the Commissioner's conclusions are rationally derived from the findings and based on a correct interpretation of the law." *Id.* (quotations omitted). We will overrule only if no evidentiary support exists for the findings or if the decision is based on " 'evidence so slight as to be an irrational basis for the result reached.' " *Id.* (quoting *Coburn v. Frank Dodge & Sons*, 165 Vt. 529, 533, 687 A.2d 465, 467-68 (1996)). The Commissioner certified two questions for our review: (1) "Did the Commissioner err in concluding as a matter of law that Defendant could not be held responsible for failing to withhold from its lump sum payment of compensation benefits the fees due

---

[1] Although the court reversed the Commissioner's decision, concluding that it did not contain a waiver of the attorney's

fee, it described the letter from the claimant's attorney as puzzling and confusing.

Claimant's attorney in accordance with her approved lien against such compensation?"; and (2) "Did the Commissioner err in concluding as a matter of law that Claimant was not entitled to satisfaction of [the] approved attorney's lien out of the monies held by Defendant?"

¶ 11. Although claimant has stated his position in four arguments on appeal, they actually reduce to two questions: (1) did the OCS lien take priority over the attorney's lien?; and (2) if yes, is this priority decision determinative since VLCT's action was not based on priority but on a different, invalid reason?

¶ 12. We first address claimant's assertion that the Commissioner erred, as a matter of law, when she determined that claimant's attorney's lien did not have priority over OCS's lien created by the trustee process summons. The resolution of this question is determined by the timing of the actions that the parties argue created the lien interests. OCS issued its trustee process in April 2005, and claimant has not disputed the effectiveness of the trustee process to secure the workers' compensation proceeds as of that date. The attorney's interest, on the other hand, began with a fee agreement signed in June 2005. The attorney argues that her attorney's lien, which arose in June 2005,[2] takes precedence over security interests created thereafter, under the rule of *Estate of Button v. Anderson*, 112 Vt. 531, 28 A.2d 404 (1942). See *Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 363 (2d Cir. 1997) (explaining that federal courts have recognized that the type of equitable lien adopted in *Estate of Button* "relates back to the date the attorney commenced suit

and has priority over a claim that was created during the pendency of the suit").[3] Even under this argument, however, the attorney's interest arose two months after that of OCS.

¶ 13. The common-law rule for the priority of liens is "first in time, first in right," and priority is based on the time a lien attaches and becomes perfected. *First Twinstate Bank v. Hart*, 160 Vt. 613, 613, 648 A.2d 820, 821 (1993) (mem.). Vermont has followed federal law that says "a lien becomes choate when nothing more needs to be done to perfect it and make it enforceable."[4] *Id.* Trustee process itself imposes a lien on the funds to which

---

[2] The injury for which compensation was sought occurred in 2003. The record does not show when the claim was filed. In any event, the attorney's involvement could not be earlier than June 2005 when the retainer was signed.

[3] Claimant relies primarily on 21 V.S.A. § 682, which authorizes the Commissioner to create attorneys' liens against compensation awards. Neither the statute, nor the DOL rules in effect at the time, nor the Commissioner's order granting the lien purport to specify when the lien is effective or its priority with respect to other claims on the compensation settlement. See Workers' Compensation Rules §§ 10.0000-10.8000, 3 Code of Vt. Rules 24 010 003 (2001) (subsequently amended 2010) (including nothing addressing lien priority). Thus, the statutory attorney's lien does not answer the issues in this case.

[4] This holding unfortunately used the word "choate," which is, as the Oxford English Dictionary explains, "[a]n erroneous word, framed to mean 'finished', or 'complete', as if the *in-* of *inchoate* were the Latin negative." (2d ed. 1989). We are not the first court to have stumbled into this linguistic pitfall. Oliver Wendell Holmes once noted, "Several of the State Courts have left equally amusing slips in the Reports. . . . I have read in a California volume that the wife on marriage acquires an inchoate right of dower which by the death of the husband becomes choate." *Id.* In fact, the mistake may be widespread enough to make it acceptable.

it attaches. *State v. Rogers*, 123 Vt. 422, 426, 193 A.2d 920, 923 (1963) ("[S]ince the claim . . . does not arise out of a right associated with the withheld funds themselves, the only claim that it can have must derive from the lien imposed by the trustee process. But that lien applies only to funds reached by the operation of the process as an attachment."). Here, OCS perfected its lien by following the dictates of 15 V.S.A. § 799,[5] and claimant has not contested that it became effective on the date OCS served the summons on VLCT. Determining priority between trustee process and other liens follows the "first in time, first in right" rule — other liens have priority over trustee process if perfected and recorded prior to the date of trustee process and vice versa. See *Sherburne Corp. v. Carter*, 133 Vt. 411, 415, 340 A.2d 82, 85 (1975) (concluding that trustee process issued by creditors against debtor prior to bank recording assignment of rights against debtor operated to give creditors priority over bank because assignment to bank was a security agreement that had to be filed to be perfected). Here, the OCS lien was first in time and took priority over the attorney's lien.

¶ 14. Our holding that the OCS lien had priority requires us to reach the second issue. Claimant argues that the lien priority determination is irrelevant because OCS waived the priority of its lien and would have accepted the workers' compensation settlement amount minus the amount of the attorney's lien, in full discharge of VLCT's obligation.[6] Further, claimant points out that VLCT knew of the attorney's lien when it paid OCS and it failed to pay the lien amount because it misread the letter of claimant's attorney as waiving the lien to pay her fee. Thus, claimant argues, in failing to pay the attorney's fee VLCT did not rely upon the priority of the OCS lien — a priority that did not exist in fact — and cannot rely upon it now. In claimant's view, the court's decision that the attorney did not waive her fee ended this case.

¶ 15. The deficiency in claimant's argument is that there is no evidence that VLCT knew that OCS would waive its priority to allow VLCT to pay the lien amount to claimant's attorney. This is the basis of the Commissioner's decision, and we conclude that it is correct. Under 15 V.S.A. § 799(e), VLCT was required to "tender to [OCS] the assets of the obligor in its possession up to the amount specified in the summons." VLCT did exactly as the law required. The fact that VLCT did this for the wrong reason is not the point. Nor is it determinative that OCS would have waived its priority over the

---

The New York Times explains that *"choate* developed a momentum all its own, at least in American legal circles . . . [and] now appears in most major U.S. law dictionaries." B. Zimmer, *On Language*, N.Y. Times, Dec. 31, 2009. We decline to reach the question of the permissibility of "choate."

[5] Noting that 15 V.S.A. § 780(9) defines "wages" as including "periodic payments under . . . workers' compensation," VLCT argues that the trustee process was a wage withholding order that has "priority over other legal process against the same wages" under 15 V.S.A. § 789(b). While it appears that OCS did send a notice to VLCT to wage withhold in June 2005, that notice was directed at periodic workers' compensation payments. As the facts reflect, claimant's workers' compensation claim was paid in a lump sum so that the wage withholding provisions appear inapplicable. In any event, VLCT relied upon the trustee process summons to make its payment to OCS. We do not rely on § 789(b) in this decision.

[6] OCS is not a party in this proceeding, and accordingly this decision does not address whether claimant's attorney might recover from OCS.

attorney's lien amount. Claimant never took the final step to bring the waiver to fruition, obtaining an official waiver ruling from OCS, and never informed VLCT, or had OCS notify VLCT, that OCS would waive its priority. As a result, VLCT followed the law, based on the information that it had, and the Commissioner correctly ruled that VLCT could not be required to make a double payment of the attorney's fee amount to claimant's attorney.

¶ 16. Both sides point to the routine steps that the other could have taken to avoid the mistake that occurred. The mistake was avoidable because VLCT could have clarified its obligation to pay claimant's attorney and claimant's attorney could have taken the final steps to memorialize that OCS would allow the attorney's fee to be paid and communicate that decision to VLCT. Because claimant bears the burden of proving that VLCT violated its legal obligation in paying the full workers' compensation amount to OCS, claimant's attorney bears the economic consequences of the mistakes.

¶ 17. Claimant argues that giving preference to the OCS lien is poor public policy because workers will not have access to compensation without assistance of counsel, and counsel will be unavailable if he or she cannot be paid for services. Claimant's point is well taken, but OCS's willingness to respect attorneys' liens appears to implement the policy, irrespective of the priority determined by the law. We stress that this case does not implement a debatable policy choice, but instead resolves the consequences of avoidable mistakes in the unique context of its facts. Indeed, the Commissioner has attempted to prevent this kind of mistake in the future by an amendment to the DOL rules, that reads: "An employer/carrier with notice of an acknowledged lien shall notify the claimant's attorney prior to issuing payment to the claimant." Workers' Compensation Rules § 10.4012, 3

Code of Vt. Rules 24 010 003 (effective June 15, 2010), available at http://www.michie.com/vermont. While the language does not explicitly state that the obligation to notify claimant's attorney is also present if the payment is made to a third party on behalf of the claimant, it should be read broadly to include such a situation. Under the new language, the burden of the mistake would fall on the employer or carrier, and, as a result, the employer or carrier will be more careful to insure that attorney's liens are honored.

*Affirmed.*